MITCHELL, SECRETARY OF LABOR, *v.* ROBERT DeMARIO JEWELRY, INC., ET AL.

No. 39.   Argued November 16, 1959.—Decided January 18, 1960.

*Bessie Margolin* argued the cause for petitioner.   With her on the brief were *Solicitor General Rankin, Harold C. Nystrom* and *Jacob I. Karro.*

*R. Lamar Moore* argued the cause and filed a brief for respondents.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Section 15 (a)(3) of the Fair Labor Standards Act of 1938, 52 Stat. 1068, 29 U. S. C. § 215 (a)(3), makes it unlawful for an employer covered by that Act—

> "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . . ."

By § 17 of the Act, 52 Stat. 1069, as amended, 29 U. S. C. § 217, the District Courts are given jurisdiction—

> "for cause shown, to restrain violations of section 15: [1] *Provided,* That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action."

The question for decision is whether, in an action brought by the Secretary of Labor to enjoin violations of § 15 (a)(3), Section 17 empowers a District Court to order reimbursement for loss of wages caused by an unlawful discharge or other discrimination.

The facts, as found by the District Court,[2] are not in dispute. Several of the employees of the respondent corporation had sought the aid of the Secretary of Labor, petitioner here, in seeking to recover wages allegedly unpaid in violation of §§ 6 (a) and 7 (a) of the Act. The Secretary instituted an action pursuant to § 16 (c) of the statute, 63 Stat. 919, 29 U. S. C. § 216 (c), on behalf of

---

[1] In addition to the conduct prohibited by § 15 (a)(3), various other activities are proscribed by paragraphs (1), (2), (4), and (5) of subdivision (a) of that section.

[2] The opinion of the District Court is reported in 13 WH Cases 709.

the aggrieved employees, for the recovery of the unpaid compensation. After the commencement of such action, respondents commenced a course of discriminatory conduct against three of the complaining employees, culminating in their discharge. In a second action by the Secretary, pursuant to § 17, this discrimination was found by the District Court to have been caused by respondents' "displeasure" over the actions of the employees in authorizing suit.

Finding the evidence of unlawful discrimination "clear and convincing," the District Court granted an injunction against further discrimination and ordered reinstatement of the three discharged employees, without loss of seniority. As to reimburseme t for loss of wages, the court, expressly reserving the question whether it had jurisdiction to order such reimbursement, declined in the exercise of its discretion to do so. On appeal, the Court of Appeals did not reach the question of abuse of discretion, for it held that the District Court lacked jurisdiction to order reimbursement of lost wages resulting from an unlawful discharge. 260 F. 2d 929. The decision being in conflict with that of the Court of Appeals for the Second Circuit in *Walling* v. *O'Grady,* 146 F. 2d 422, we granted certiorari. 359 U. S. 964.

We initially consider § 17 apart from the effect of its proviso, which was added in 1949. The court below took as the touchstone for decision the principle that to be upheld the jurisdiction here contested "must be expressly conferred by an act of Congress or be necessarily implied from a congressional enactment." 260 F. 2d, at 933. In this the court was mistaken. The proper criterion is that laid down in *Porter* v. *Warner Co.,* 328 U. S. 395. This Court there dealt with an action brought by the Price Administrator under the Emergency Price Control Act of 1942 to enjoin the collection of excessive rents and to require the landlord to reimburse its tenants for moneys

paid as a result of past violations. We upheld the implied power to order reimbursement, in language of the greatest relevance here:

> "Thus the Administrator invoked the jurisdiction of the District Court to enjoin acts and practices made illegal by the Act and to enforce compliance with the Act. Such a jurisdiction is an equitable one. Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. . . . . [T]he court may go beyond the matters immediately underlying its equitable jurisdiction . . . and give whatever other relief may be necessary under the circumstances. . . .
>
> "Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.' *Brown* v. *Swann,* 10 Pet. 497, 503. . . ." 328 U. S., at 397–398.

The applicability of this principle is not to be denied, either because the Court there considered a wartime statute, or because, having set forth the governing inquiry, it went on to find in the language of the statute affirmative confirmation of the power to order reimbursement. *Id.,* at 399. When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory

enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes. As this Court long ago recognized, "there is inherent in the Courts of Equity a jurisdiction to . . . give effect to the policy of the legislature." *Clark* v. *Smith,* 13 Pet. 195, 203. To the policy of the Fair Labor Standards Act we therefore now turn.

The central aim of the Act was to achieve, in those industries within its scope, certain minimum labor standards. See § 2 of the Act, 52 Stat. 1060, 29 U. S. C. § 202. The provisions of the statute affect weekly wage dealings between vast numbers of business establishments and employees. For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This end the prohibition of § 15 (a)(3) against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. Cf. *Holden* v. *Hardy,* 169 U. S. 366, 397. By the proscription of retaliatory acts set forth in § 15 (a)(3), and its enforcement in equity by the Secretary pursuant to § 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

In this context, the significance of reimbursement of lost wages becomes apparent. To an employee considering an attempt to secure his just wage deserts under the Act, the value of such an effort may pale when set against the prospect of discharge and the total loss of wages for

the indeterminate period necessary to seek and obtain reinstatement. Resort to statutory remedies might thus often take on the character of a calculated risk, with restitution of partial deficiencies in wages due for past work perhaps obtainable only at the cost of irremediable entire loss of pay for an unpredictable period. Faced with such alternatives, employees understandably might decide that matters had best be left as they are. We cannot read the Act as presenting those it sought to protect with what is little more than a Hobson's choice.

Respondents argue that, in the absence of a contrary contractual provision, an employee cannot recover lost wages owing to a discriminatory discharge, and that the jurisdiction here invoked is therefore to be regarded as "punitive," outside the function of equity unless expressly authorized by the statute. We intimate no view as to the validity of the premise, for it in no way supports the conclusion. Whatever the rights of the parties may be under traditional notions of contract law, it is clear that under § 15 (a)(3) such a discharge is not permissible. Even assuming, without deciding, that the Act did not contemplate the private vindication of rights it bestowed,[3] the public remedy is not thereby rendered punitive, where the measure of reimbursement is compensatory only. Respondents cannot be heard to assert that wages are ordered to be paid for services which were not performed, for it was the employer's own unlawful conduct which deprived the employees of their opportunity to render services.

It is contended, however, that even though equitable jurisdiction to restore lost wages resulting from an unlawful discharge may originally have existed under § 17, such jurisdiction was withdrawn by the 1949 proviso which dis-

---

[3] Cf. Bonner v. Elizabeth Arden, Inc., 177 F. 2d 703, 705; Powell v. Washington Post Co., 105 U. S. App. D. C. 374, 375, 267 F. 2d 651, 652.

abled courts in § 17 actions from awarding "unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages . . . ." *Ante,* p. 289. When considered against its background we think the proviso has no such effect.

Shortly before the enactment of this proviso the Court of Appeals for the Second Circuit had decided in *McComb* v. *Frank Scerbo & Sons,* 177 F. 2d 137, that in a § 17 suit brought by the Secretary to enjoin violations of the minimum wage and overtime provisions of the Act, the court had power to order reimbursement of unpaid overtime wages. The effect of this decision was to enable the Secretary in such a suit to recover on behalf of employees that which would otherwise have been recoverable only in an action brought by the employees themselves under § 16 (b) of the statute, 52 Stat. 1069, 29 U. S. C. § 216 (b). The § 17 proviso was aimed at doing away with this result. Even so, Congress did not see fit to undo the effects of *Scerbo* entirely, for at the time it enacted the § 17 proviso it also added to the Act § 16 (c), whereby the Secretary was empowered to bring a representative action on behalf of employees to recover unpaid wages in cases other than those involving "an issue of law which has not been settled finally by the courts." 63 Stat. 919, 29 U. S. C. § 216 (c).[4] Thus, presumably Congress felt that the Secretary should not lend his weight to, nor be burdened with, actions for unpaid wages except in the clearest cases.

We find no indication in the language of the § 17 proviso, or in the legislative history, that Congress intended the proviso to have a wider effect, that is, that it was intended to apply to reimbursement of *lost* wages incident

---

[4] A further limitation was that there would be no right to seek double damages, which are recoverable only in actions brought by employees under § 16 (b).

to a wrongful discharge, as distinguished from the recoupment of *underpayments* of the statutorily prescribed rates for those while still employed. The proviso speaks entirely in terms of unpaid *minimum* wages and overtime. In effectuating the policies of the Act the proper reach of equity power in suits by the Secretary under the wage provisions of the statute, and that in suits under the discharge provisions, are attended by quite different considerations, which, in passing the 1949 amendments, Congress evidently had in mind. We are not persuaded by respondents' argument that because the Second Circuit in *Scerbo* partially relied on its earlier decision in *Walling* v. *O'Grady, supra,* and because the House Conference Report on the 1949 amendments stated that the § 17 proviso "will have the effect of reversing such decisions as *McComb* v. *Scerbo* . . . in which the court included a restitution order in an injunction decree granted under section 17," H. R. Conf. Rep. No. 1453, 81st Cong., 1st Sess., p. 32, the proviso must be taken as having been intended to overrule the *O'Grady* case as well. *O'Grady* was a discriminatory discharge case, not a wage case as was *Scerbo*. And before the 1949 amendments expressions of other lower courts had indicated a point of view similar to that espoused in *Scerbo*. See *Fleming* v. *Alderman,* 51 F. Supp. 800; *Walling* v. *Miller,* 138 F. 2d 629; *Fleming* v. *Warshawsky & Co.,* 123 F. 2d 622.

Rather than expressing a general repudiation of equitable jurisdiction to order reimbursement to effectuate the policies of the Act, we think that the 1949 amendments evidence a purpose to make only limited modifications in the nature and extent of the Secretary's power to obtain reimbursement of unpaid compensation.[5] This

---

[5] The Conference Report makes this clear: "This proviso has been inserted . . . in view of the provision of the conference agreement contained in section 16 (c) of the act which authorizes the Administrator in certain cases to bring suits for damages for unpaid minimum

being so, there is no warrant for construing the § 17 proviso as reaching beyond suits to enjoin violations of the minimum wage and overtime provisions of the statute, so as wholly to eradicate any jurisdiction to restore wage losses to employees discharged in violation of § 15 (a)(3). To the contrary, in view of the related character of the issues presented in *O'Grady* and *Scerbo,* the modification in the area treated by the latter case bespeaks an intention to leave the *O'Grady* decision intact. The 1949 amendments, then, only serve to confirm the result we reach independently of them.

We hold that, in an action by the Secretary to restrain violations of § 15 (a)(3), a District Court has jurisdiction to order an employer to reimburse employees, unlawfully discharged or otherwise discriminated against, for wages lost because of that discharge or discrimination. The Court of Appeals did not reach the question whether the District Court abused its discretion in declining to order reimbursement. While, because of what we have found to be the statutory purposes there is doubtless little room for the exercise of discretion not to order reimbursement, since we do not have the entire record before us we shall remand the case to the Court of Appeals for consideration of that issue.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS, while joining in this opinion, agrees with MR. JUSTICE WHITTAKER that other remedies are available and that any remedy obtained in this equity action is complementary to them.

---

wages and overtime compensation owing to employees at the written request of such employees. Under the conference agreement the proviso does not preclude the Administrator from joining in a single complaint causes of action arising under section 16 (c) and section 17." H. R. Conf. Rep. No. 1453, 81st Cong., 1st Sess.; p. 32; see 95 Cong. Rec. 14879.

Mr. Justice Whittaker, with whom Mr. Justice Black and Mr. Justice Clark join, dissenting.

I cannot agree with the Court's opinion. My disagreement rests on the belief that Congress has expressly withheld jurisdiction from District Courts to make awards against employers in favor of employees for "wages" lost as a result of unlawful discharges, in injunction actions, such as this, brought by the Secretary of Labor under § 17 of the Fair Labor Standards Act of 1938, 52 Stat. 1069, as amended, 29 U. S. C. § 217.

Several employees of the corporate respondent, believing that they had not been paid the minimum wages and overtime compensation prescribed by §§ 6 (a) and 7 (a) of the Act, 29 U. S. C. §§ 206 (a), 207 (a), requested the Secretary of Labor, in writing, to institute an action against the corporate respondent under § 16 (c) of the Act, 29 U. S. C. § 216 (c), to recover the amount of their claims. The Secretary did so on November 16, 1956. Soon afterward, three of these employees were discharged. On May 17, 1957, the Secretary brought another suit against respondents in the same District Court—this time under § 17 of the Act, 29 U. S. C. § 217—complaining that respondents had discharged the three employees in violation of § 15 (a)(3) of the Act, 29 U. S. C. § 215 (a)(3), and praying for an order enjoining respondents from violating the provisions of that section, reinstating the three employees, and awarding reparations to them for wages lost because of their wrongful discharge. The District Court found that the employees had been discharged, in violation of § 15 (a)(3), for instigating the first action, issued an injunction against respondents from violating that section, and ordered respondents to offer reinstatement to those employees. But the district judge doubted that he had jurisdiction under § 17 to award reparations to the employees for their lost wages, and held that, even if he did have jurisdiction to do so, such

an award of reparations should be denied as a matter of discretion. On the Secretary's appeal, the Court of Appeals affirmed, 260 F. 2d 929, holding that the District Court had no jurisdiction, in an injunction action brought by the Secretary under § 17, to award reparations for wages lost by the employees because of their wrongful discharge. We granted certiorari, 359 U. S. 964.

The question before us, then, is whether a District Court has jurisdiction in an injunction action brought by the Secretary of Labor under § 17 of the Act to make an award of reparations against an employer in favor of an employee, found to have been wrongfully discharged and entitled to reinstatement, for the "wages" that he lost by being wrongfully excluded from his job.

The Court, heavily relying upon the long reach of unrestricted general equity powers, particulary as elucidated in *Porter* v. *Warner Co.,* 328 U. S. 395, 397–398,[1] holds

---

[1] *Porter* v. *Warner, supra,* involved § 205 (a) of the Emergency Price Control Act of 1942, 56 Stat. 23, 33, which authorized state and federal courts, upon complaint of the Administrator, to grant "a permanent or temporary injunction, restraining order, *or other order,*" to enforce compliance with the Act and its policy. (Emphasis added.) There the Administrator had sued a landlord to enjoin collection of excessive rents and to require the landlord to tender to his tenants the excess rents collected. The District Court granted the relief prayed. This Court approved that action, saying that "An order for the recovery and restitution of illegal rents may be considered a proper 'other order' . . . ." 328 U. S., at 399. It observed that the Report of the Senate Committee, submitted with the bill that became the Emergency Price Control Act, stated that under § 205 (a) of that Act ". . . Such courts are given jurisdiction to issue whatever order to enforce compliance is proper in the circumstances of each particular case." 328 U. S., at 400–401. In the light of the provisions of § 205 (a) and its legislative history, this Court held "that the traditional equity powers of a court remain unimpaired in a proceeding under that section so that an order of restitution may be made." 328 U. S., at 400.

that a District Court does have such jurisdiction and power.

It is not to be doubted that an equity court, proceeding under unrestricted general equity powers, may decree all the relief, including incidental legal relief, necessary to do complete justice between the parties. Here, however, the District Court was proceeding, not under unrestricted general equity powers, but under a statute—§ 17 of the Act—the proviso of which expressly denies to all courts jurisdiction and power, in an action brought by the Secretary for an injunction under that section, "to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action."

The Court does not dispute the fact that Congress by the proviso in § 17 deprived the courts of jurisdiction to "order the payment to employees of unpaid minimum wages or unpaid overtime compensation . . ." in an injunction action brought by the Secretary under that section, in a case where the wages have been *earned by services rendered;* but the Court seems to think that an award of reparations to an employee for wages *lost because of a wrongful discharge* is not one "order[ing] the payment to employees of unpaid minimum wages or unpaid overtime compensation . . ." and that, therefore, the court is not deprived by the proviso in § 17 of jurisdiction to make such an award in such a case. Here, I think, lies the fallacy. The only possible basis or theory under which a wrongfully discharged employee might recover his lost wages is that the attempted discharge, being unlawful, never became effective, and since he was unlawfully excluded from his job his wages continued to accrue. It would seem necessarily to follow that an award for those lost "wages" would be as much one for "unpaid minimum wages or unpaid overtime compensation" as would

an award for "wages" for services actually performed. If it may be thought that an award for lost wages should properly be called one for "damages," the result would be the same, for the sole measure of such "damages" would be the lost wages. Hence, it seems inescapable that however viewed an award for wages lost because of an unlawful discharge is one for, or that at least embraces, unpaid minimum wages or unpaid overtime compensation or both.

Before Congress added subdivision (c) to § 16 and the proviso to § 17 in 1949, the Second Circuit had held in *Walling* v. *O'Grady,* 146 F. 2d 422, that a District Court, acting under its unrestricted general equity powers, had jurisdiction, in a suit brought by the Secretary under § 17 of the Act as it then stood, to order not only an injunction against violation of the provisions of § 15 (a)(3) of the Act, and reinstatement of employees wrongfully discharged, but also an award of reparations for wages lost by employees because of their wrongful discharge. Thereafter, following, as it said, the principles it announced in the *O'Grady* case, the Second Circuit held in *McComb* v. *Frank Scerbo & Sons,* 177 F. 2d 137, that a District Court, proceeding under its unrestricted general equity powers, had jurisdiction, in an injunction action brought by the Secretary under § 17 as it then stood, to award reparations to employees for unpaid minimum wages and overtime compensation to which their past services entitled them.

Evidently dissatisfied with those decisions, Congress passed the Act of Oct. 26, 1949, 63 Stat. 919, by which it added subsection (c) to § 16 and the proviso to § 17 of the Act. By subsection (c) [2] of § 16, Congress provided,

[2] Subdivision (c), added to § 16 of the Act by Congress in 1949, in pertinent part, provides:

". . . When a written request is filed by any employee with the Secretary claiming unpaid minimum wages or unpaid overtime compensation under section 6 or section 7 of this Act, the Secretary may

in effect, that when an employee files a written request with the Secretary claiming unpaid minimum wages or unpaid overtime compensation under § 6 or § 7 of the Act, "the Secretary may bring an action in any court of competent jurisdiction to recover the amount of such claim . . . ." In such an action the Secretary, of course, sues as a trustee or use plaintiff for the benefit of the employee, and the action is one at law triable by a jury under the Seventh Amendment of the United States Constitution. That is the only remedy which Congress has provided for the recovery of unpaid minimum wages and overtime compensation by suit instituted and prosecuted by the Secretary. By the proviso to § 17, Congress provided: "That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action." The Conference Report that accompanied that bill, H. R. Conf. Rep. No. 1453, 81st Cong., 1st Sess., p. 32, said, respecting the proviso, that: "The provision . . . will have the effect of reversing such decisions as *McComb* v. *Scerbo* . . . , in which the court included a restitution order in an injunction decree granted under section 17." It seems evident from that statement of the Conference Committee that Congress intended the proviso to, in effect, reverse not only *McComb* v. *Scerbo,* but also all other "such decisions."·

---

bring an action in any court of competent jurisdiction to recover the amount of such claim: . . . The consent of any employee to the bringing of any such action by the Secretary, unless such action is dismissed without prejudice on motion of the Secretary, shall constitute a waiver by such employee of any right of action he may have under subsection (b) of this section for such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. . . ." 63 Stat. 919.

Not only is it clear from the opinions themselves that the Second Circuit applied the same legal principles in *Scerbo* that it had earlier applied in *O'Grady,* but, moreover, that court said that it did so. In the *Scerbo* case the court said: "Defendants attempt to distinguish the *O'Grady* case because the individual employee's right to sue for back pay lost by a discriminatory discharge is not explicit in the Act. We do not agree that the case is distinguishable . . . ." 177 F. 2d, at 138. And, in his separate opinion concurring only in the result, Judge Learned Hand's opening sentence was: "I agree that the decision below followed from what has been decided before . . . ." 177 F. 2d, at 140. It thus seems quite clear, not only from the terms of the proviso but also from the legislative history declaring its purpose, that Congress intended not only to deny jurisdiction to District Courts, in injunction actions brought by the Secretary under § 17, to award reparations for unpaid minimum wages or overtime compensation, but also, in effect, to reverse "such decisions as *McComb* v. *Scerbo.*" Surely *Walling* v. *O'Grady, supra,* was "such [a] decision" as *McComb* v. *Scerbo.*[3]

---

[3] When, in 1949, Congress adopted the proviso to § 17 there were only two decisions, in addition to the *O'Grady* and *Scerbo* cases, holding that a District Court had jurisdiction in an injunction action brought by the Secretary under § 17 to make an award of reparations for unpaid wages, namely, *Fleming* v. *Warshawsky & Co.,* 123 F. 2d 622 (C. A. 7th Cir.), and *Fleming* v. *Alderman,* 51 F. Supp. 800 (D. C. D. Conn.). In neither of these cases did the employer contest the jurisdiction of the District Court to award reparations for unpaid wages. Instead, each employer appeared in the District Court and agreed to the entry of a consent decree awarding back pay to the employees. It was largely because of those agreements that those courts held that they had jurisdiction to enter the consent decrees. Thus, when Congress adopted the proviso to § 17, the only contested decisions on the point were the *O'Grady* and *Scerbo* cases. Hence, the reference in the House Conference Report, *supra,* to "such decisions as *McComb* v. *Scerbo*" seems necessarily to have been

This review seems plainly to show that Congress intended by § 16 (c) to allow recovery of unpaid minimum wages and overtime compensation at the instance of the Secretary only in an action at law, brought under that subsection, and triable by a jury; and that it intended by the proviso to § 17 to deny jurisdiction to District Courts, in injunction actions brought by the Secretary under that section, to award reparations for "wages," including "unpaid minimum wages [and] unpaid overtime compensation," whether earned by the rendition of services or by unlawful denial of the opportunity to earn them.

I think a wrongfully discharged employee may maintain in his own right an action at law, triable by a jury, under either § 16 (b) or the common law, or the Secretary may do so by an action at law under § 16 (c), to recover wages lost by the employee as a result of his wrongful discharge. But, for the reasons hereinbefore stated, it seems to me that the Court of Appeals was correct in holding that the District Court was without jurisdiction to make an award of reparations for lost wages in this injunction action brought by the Secretary under § 17, and I would affirm its judgment.

---

intended to include the *O'Grady* decision as well as *McComb* v. *Scerbo*, for it was really the only other "such decision" in the books. The separate concurring opinion of one of the judges in *Walling* v. *Miller*, 138 F. 2d 629 (C. A. 8th Cir.), saying that a District Court had jurisdiction under § 17, as it stood prior to the adoption of the 1949 proviso, to make an award for unpaid wages did not express the views of the court.