HERBOLD LABORATORY, INC. and
Milton Herbold, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 22105.

United States Court of Appeals
Ninth Circuit.

June 26, 1969.

J. E. Simpson (argued), Los Angeles, Cal., for appellants.

Larry L. Dier (argued), Asst. U.S. Atty., Wm. Matthew Byrne, Jr., U.S. Atty., Frederick M. Brosio, Jr., Chief, Civil Div., Los Angeles, Cal., for appellee.

Before MERRILL, ELY, and HUF-STEDLER, Circuit Judges.

ELY, Circuit Judge:

The Federal Trade Commission issued, in 1951, a Cease and Desist Order di-

recting appellants to refrain from advertising that their product "Herbold Pomade" was capable of restoring a user's hair to its "former natural shade or color."[1] In 1965, the Government instituted suit in the District Court, seeking the imposition of civil penalties authorized by the Federal Trade Commission Act, § 5(l). 15 U.S.C. § 45(l). The action was grounded upon certain alleged violations by appellants of the Order. The District Court imposed fines totaling $3,500.00 upon finding that appellants' advertisements, set out in the margin,[2] violated the Order. Additionally, the court granted injunctive relief, although the Government had not requested such a remedy in its pleadings or until after the introduction of all evidence.

1. The Order, so far as relevant here, provided:

> "IT IS ORDERED that the [appellants] * * * in connection with the * * * preparation designated as 'Herbold Pomade' * * * forthwith cease and desist from, directly or indirectly:
>
> 1. Disseminating * * * by any means in commerce * * * any advertisement which represents, directly or by implication:
> * * * * *
>
> (b) That said preparation will impart the former natural shade or color to gray, streaked, or faded hair."

2. The pertinent portions of the four advertisements alleged to violate the Order set out in note 1, *supra*, read as follows:

> (1) "If your hair is gray, streaked, dry, drab, faded, yellowish, or mousey looking, simply use Herbold Pomade as your regular hair dressing. It will blend in lasting color just right for your hair, but will not change its shade, only brighten it. * * *
> "Not a coal tar dye, but a special rich hair cream that keeps the gray away by replacing lost color and oils so vital to young, healthy-looking well-groomed hair.
>
> "However, gray, dry, lifeless hair needs more than color. It should have the special conditioning hair oils in Herbold Pomade, to correct dryness, restore a lustrous, vigorous, young alive look—and keep it neatly in place, all day.
>
> "Regular use of Herbold Pomade will keep your hair young-looking for as long as you use it—the rest of your life if you choose, with the assurance of no more old gray look for you."
>
> (2) " * * * simply use Herbold Pomade as your hair dressing. It will blend in lasting color just right for your hair, but will not change its shade; only brighten it.

> "As grayness gradually disappears, your hair becomes lustrous and young looking again. * * *
>
> "Not a coal tar dye, but a special rich hair cream, that keeps the gray away by replacing lost color and oils, so vital to young, healthy looking well-groomed hair."
>
> (3) " * * * try HERBOLD POMADE. It will blend in lasting color just right for your hair, but will not change its shade, only brighten it.
> " * * * Herbold Pomade is not a coal tar dye, tint, or rinse; but a special rich hair cream that keeps the gray away by replacing lost color and oils so vital to young healthy-looking well groomed hair. * * *
>
> "However, gray, dry, lifeless hair needs more than color. It should have the special conditioning hair oils in Herbold Pomade, to correct dryness, restore a lustrous young alive look, with a bouncy satiny sheen, and to hold it in place all day."
>
> (4) " * * * Herbold Pomade * * * will blend in lasting color just right for your hair, but will not change its shade; only brighten it.
>
> "As grayness gradually disappears, your hair becomes lustrous and young looking again. * * *
>
> "Not a coal tar dye or tint—no patch test—no confusing shades—but a special rich hair cream, that keeps the gray away by restoring lost color and oils, so vital to young, healthy looking, well-groomed hair."

The headlines for the first three advertisements all stated that "A Dab a Day, Keeps the Gray Away" and contained the following sub-heading: "Amazing Hair Cream Tones Down Grayness. Hair Looks Young Again." The fourth advertisement added, as part of the headline, the qualification "without changing your natural shade" to the claim that Herbold Pomade "Tones Down Grayness."

■ We reverse the judgment below [3] because the advertisements alleged and held to constitute infractions do not, in our opinion, violate the Cease and Desist Order. These advertisements do not represent, as the Order forbids, that appellants' products will restore the "former natural shade or color to gray, streaked, or faded hair." The advertisements represent that a user of "Herbold Pomade" will look younger because the product will darken gray, streaked, or faded hair and leave it natural looking. Nowhere do we find the express claim or necessarily implied representation that the product will restore the same natural color of hair that a user once possessed. Rather than fraudulent advertising, the representations were, at worst, the normal "puffing" and self-promoting adopted by the sponsors of most marketable items of the same type.

■ It is altogether likely that the District Court, had it reached the conclusion that the appellants had not violated the Order, would not have undertaken to enjoin future violations. Since, however, we cannot be positive that this is so, it is necessary to examine the propriety of the injunctive power which was exercised. We entertain serious doubt that Congress has empowered the District Courts to enjoin violations of the Commission's Cease and Desist Orders. Section 5(*l*) of the Federal Trade Commission Act specifies the penalties for both isolated and continuing violations of such Orders:

"Any person, partnership, or corporation who violates an order of the Commission to cease and desist after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States.

Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the Commission each day of continuance of such failure or neglect shall be deemed a separate offense."

15 U.S.C. § 45(*l*). Congress, in prescribing a civil action for monetary penalties, indicated no intent that the equitable powers of District Courts to issue injunctions might also be invoked.[4] When a statute so clearly provides certain, specific sanctions for violations of a Cease and Desist Order, we cannot believe that the courts should reach beyond the statutory provisions and exert a power which, apparently, the Congress has deliberately withheld.

The Government contends that, notwithstanding the lack of express or necessarily implied statutory authorization, the District Court retained its inherent, equitable power to grant injunctive relief under the teaching of Mitchell v. Robert DeMario Jewelry, Inc., 361 U. S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323, (1960). That case involved a suit, expressly authorized by statute, to enjoin discriminatory dismissals of employees by an employer and to order their reinstatement. See Fair Labor Standards Act §§ 15(a) (3), 17, 29 U.S.C. §§ 215(a) (3), 217. The trial court granted the authorized injunctive relief but declined to enter an equitable decree for reimbursement of lost wages. The Supreme Court held that Congress, in expressly granting jurisdiction to restrain violations of the Act, had the inherent equitable jurisdiction of the District Court in mind. It followed, held the Supreme Court, that the District Court possessed all of its traditional equitable powers, including the power to order reimbursement of wages as compensatory relief, in the absence of an express or

3. United States v. Herbold Laboratory, Inc., 267 F.Supp. 53 (C.D.Cal.1967).

4. Section 13(a) of the Act, 15 U.S.C. § 53 (a), confers jurisdiction on the District Court to issue temporary restraining orders and preliminary injunctions to enjoin advertisements in violation of section 12, 15 U.S.C. § 52, concerning food, drugs, devices, and cosmetics.

necessarily implied congressional restriction on the statutory grant of equitable jurisdiction. 361 U.S. at 290–293, 80 S.Ct. 332, following Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (wherein a statute authorized lower courts to grant "a permanent or temporary injunction, restraining order, or other order");[5] accord, Alabama v. United States, 304 F. 2d 583 (5th Cir.), aff'd, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962). The Court also held that the equitable power to order reimbursement of wages was necessary to effectuate the purposes of the Act. 361 U.S. at 292–293, 80 S.Ct. 332.

 These cases are distinguishable from that before us. The jurisdiction of the District Court under section 5(l) of the Federal Trade Commission Act is not an inherently equitable jurisdiction. The District Court is authorized therein only to award up to $5,000 in civil penalties for each separate violation, or, in the event of continuing failure or neglect to obey the Commission's Order, up to $5,000 for each day of continued violation. There is no express grant of injunctive power for the purpose of restraining violations of final Orders of the Commission, whereas there were express grants of such power in the statutes involved in the cases upon which the Government relies. Injunctions against future advertising violations are not reasonably necessary in aid of the specific powers attending section 5(l)'s grant of jurisdiction to the District Courts. Presumably, Congress supposed that the provisions for very heavy civil fines, accumulating day by day for continuing violations, would be sufficient to deter advertising in violation of final Cease and Desist Orders.

Finally, aside from the absence of statutory authorization, an order of injunction should not have been incorporated into the judgment in this case. The suggestion for such was first advanced by Government counsel in closing oral argument, and there was no prior pleading or notice of any kind to appellants which would have enabled them to prepare and present a defense against the remedy suddenly urged against them.

Upon remand, the District Court will dismiss the complaint.

Reversed.

---

5. As with the statutes involved in these Supreme Court cases, Congress has provided that the equitable jurisdiction of the District Courts may be invoked to restrain statutory violations of other regulatory programs wherein such jurisdiction was deemed necessary to protect the public interest. *See, e. g.,* Sherman Act

§ 4, 15 U.S.C. § 4; Food, Drug, and Cosmetic Act § 302(a), 21 U.S.C. § 332(a). We reemphasize that the Federal Trade Commission Act does not contain a grant of similar authority to the District Courts for the enforcement of the Commission's final Cease and Desist Orders.