UNITED STATES of America,

v.

DUQUESNE LIGHT COMPANY et
al., Defendants.

Civ. A. No. 75–1110.

United States District Court,
W. D. Pennsylvania,
Civil Division.

Nov. 30, 1976.

**508**

Louis G. Ferrand, Jr., Employment Section, U. S. Dept. of Justice, James D. Henry, Kathleen M. Lucas, Ira Sherman, Dept. of Labor, Washington, D. C., David B. Atkins, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

J. Craig Kuhn, Kuhn, Engle, Blair & Stein, Scott F. Zimmerman, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Richard L. Trumka, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

TEITELBAUM, District Judge.

This is an action brought by the United States against the Duquesne Light Company of Pittsburgh to enforce the contractual obligations imposed by Executive Order No. 11246, as amended (3 C.F.R. 169 et seq.). The Executive Order provides that all (non-exempt) contractors with the government agree to engage in non-discriminatory employment practices as part of their contractual obligations.

The complaint alleges that Duquesne Light is a government contractor subject to Executive Order 11246, and that the company has utilized employment practices which discriminate against blacks and women in violation of the Executive Order and the regulations promulgated thereunder. The government seeks, inter alia, injunctive relief against Duquesne Light, including compensatory payments (back pay) to black and female employees of the defendant company and to black and female applicants who were rejected for employment.

The case is presently before the Court on Duquesne Light's motion under Rule 12 of the Federal Rules of Civil Procedure to dismiss those portions of the complaint which seek an award of back pay for persons allegedly discriminated against in employment by defendant on the basis of race or sex, and who continue to suffer the current effects of such alleged discrimination; in addition, defendant contends that the instant suit should be dismissed as to its Shippingport Atomic Power Station on grounds that a 30-day show cause notice was not issued by the Federal Energy Research and Development Administration regarding that facility. For reasons noted briefly below, defendant's motion will be denied.

Defendant initially contends that there exists no congressional or constitutional authority for an executive decision to secure, in a breach of contract action, back pay for the victims of racial or sexual discrimination practiced in the past by government contractors. A similar issue was decided in Contractor's Ass'n. v. Secretary of Labor, 442 F.2d 159 (3rd Cir. 1971). In that case, plaintiffs challenged the validity of affirmative action programs instituted by the Secretary of Labor under the auspices of Executive Order 11246. The Court of appeals held that statutory authority for the programs could be found in § 205(a) of the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 486(a) [hereinafter "FPASA"].[1] This section empowers the President to take measures to implement the basic policy of the Act, which is to establish an "economical and efficient" system for government procurement of property and services.[2] The affirmative action programs before the Court in Contractor's Ass'n. were found to be in furtherance of the policy underlying the FPASA because:

" . . . it is in the interest of the United States in all procurement to see

---

1. The text of § 205(a) reads: "the President may prescribe such policies and directives, not inconsistent with the provisions of this Act, as he shall deem necessary to effectuate the provisions of said Act, which policies and directives shall govern the Administrator and executive agencies in carrying out their respective functions hereunder." 40 U.S.C. § 486(a) (1970).

2. 40 U.S.C. § 471 (1970).

that its supplier is not over the long run increasing its costs and delaying its programs by excluding from the labor pool available minority workmen." 442 F.2d at 170.

 Similarly, the President may believe that the availability of restitutionary relief, by providing an incentive to eliminate discriminatory employment practices, would decease government costs as effectively as would affirmative action programs of the type upheld in *Contractor's Ass'n.* The Court is not concerned with the validity of such a theory; whether *vel non* a back-pay order would further the purposes of the Act is a question to be determined by the President under § 205(a) of the FPASA. Here, where the question is the authority of the executive to enact a program, it is enough for the Court to say that neither the language nor the policy of the statute is contradicted by a suit for restitutionary relief.[3]

As an alternative ground for its decision, the Court in *Contractor's Ass'n.* stated that the Executive Order could be supported by the inherent authority of the President, regardless of whether statutory authorization could be found. 442 F.2d at 171. Whether the authority be inherent or statutory, it would include the right to seek a back-pay order for the reasons stated above.

Having decided that statutory and constitutional authority for the executive to seek restitutionary relief from government contractors allegedly guilty of discriminatory employment practices does exist, we turn to the question of whether Executive Order 11246 itself and the regulations issued pursuant thereto allow the government to enforce the provisions of the Order by means of an action for, *inter alia,* back pay.

The sanctions and penalties available for the enforcement of the Executive Order are listed in § 209(a) thereof. Under this section, contracts with non-complying contractors may be cancelled or they may be continued upon condition that the contractor comply with the Executive Order in the future. A non-complying contractor may be barred from entering into future contracts with the government. Also, the Secretary of Labor may "[r]ecommend to the Equal Employment Opportunity Commission or to the Department of Justice that appropriate proceedings be instituted under Title VII of the Civil Rights Act of 1964."[4] Nowhere in the Executive Order or its accompanying regulations is a back-pay order specifically mentioned. This should not, however, be interpreted, by negative implication, as a statement of an intention to exclude a back-pay order as a sanction available to remedy violations of the Executive Order. Section 209(a)(2) allows the Secretary of Labor to:

"Recommend to the Department of Justice that, in cases in which there is a substantial . . . violation . . . of the contractual provisions set forth in Section 202 of this Order, *appropriate proceedings* be brought to enforce those provisions, including the enjoining, within the limits of applicable law, of organizations, individuals, or groups who prevent directly or indirectly, . . . compliance with the provisions of this Order. (Emphasis added.)

 By its reference to "appropriate proceedings," § 209(a)(2) confers on the government discretion to invoke the equitable powers of this Court. Absent a congressional limitation upon those powers, the government may seek any remedy which will effectuate the purposes of the Order,

---

**3.** Duquesne contends that Congress intended the Civil Rights Act of 1964, and the 1972 amendments to it, 42 U.S.C. § 2000a, *et seq.* (1970), to be the exclusive source of restitutionary remedies for discriminatory employment practices. The same argument was advanced and rejected with respect to affirmative action programs in *Contractor's Ass'n.* Having examined the relevant portions of the Civil Rights

Act and its legislative history, 110 Cong.Rec. 2575, 13650–52, 118 Cong.Rec. 3367–70, 3371–73, 3959–65, this Court finds no support for the contention that Congress intended Title VII to be exclusive of other sources of restitutionary relief. See *Contractor's Ass'n., supra,* at 171–4.

**4.** 3 C.F.R. at 173.

provided only that the government is constitutionally or statutorily empowered to request such relief. That this Court has the equitable power to grant, and that the government has authority to seek restitutionary relief are established propositions. *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1959); *Porter v. Warner Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1945). This Court therefore decides that the Executive Order does permit the government to request restitutionary relief.[5]

Section 209(b) of Executive Order 11246 provides that:

"Under rules and regulations prescribed by the Secretary of Labor, each contracting agency shall make reasonable efforts within a reasonable time limitation to secure compliance with the contract provisions of this Order by methods of conference, conciliation, mediation and persuasion before proceedings shall be instituted under Sub-section (a)(2) of this Section . . . ."

Under the authority granted him by § 209(b), the Secretary has issued 41 C.F.R. § 60–2.2, providing that:

"Immediately upon finding that a contractor has no affirmative action program or has deviated substantially from an approved affirmative action program or that his program is not acceptable, the contracting officer, the compliance agency representative or the representative of the Office of Federal Contract Compli-

ance, whichever has made such a finding, shall notify officials of the appropriate compliance agency and the office of Federal Contract Compliance of such fact. The compliance agency shall issue a notice to the contractor giving him 30 days to show cause why enforcement proceedings under Section 209(b) [sic—"(a)"] of Executive Order 11246, as amended, should not be instituted.

\* \* \* \* \* \*

(2) During the 'show cause' period of 30 days every effort shall be made by the compliance agency through conciliation, mediation, and persuasion to resolve the deficiencies which led to the determination of nonresponsibility. . . ."

██ The defendant maintains numerous contracts with the government, most of which are with the General Services Administration (GSA). Duquesne also maintains a contract with the government relating to the operation of its Shippingport Atomic Power Station (SAPS). Unlike the other contracts, this contract is not with GSA but with the Pittsburgh Naval Reactors Office (PNRO) of the Energy Research and Development Administration (ERDA). Duquesne concedes that a "show cause" order effective to satisfy the requirements of 41 C.F.R. § 60–2.2 was issued by GSA. It argues, however, that the SAPS facility may not be brought into this action because ERDA, the compliance agency for SAPS, has not issued a "show cause" notice, even though, as stated in the complaint (the allegations of

---

5. Duquesne Light seeks to avoid the above result by pointing out that this is an action for breach of contract and that general principles of contract law do not permit the relief sought by the government. The government is here seeking restitution; not for itself, but for the victims of past discrimination allegedly practiced by defendant. Duquesne admits that a promisee (the government here) may sue to enforce the provisions of a contract designed to benefit a third-party beneficiary. But Duquesne denies that discriminatees are third-party beneficiaries of the Executive Order. Duquesne also argues that a promisee seeking to enforce contract provisions in favor of a third-party beneficiary is entitled only to specific performance and is not entitled to recover damages.

Were this an ordinary contract action the Court would be constrained to delve more deeply into the issues of contract law presented by the defendant. But while this action is ostensibly brought in contract, it is in actuality an attempt to enforce a statutorily-authorized administrative program. Executive Order 11246, while enacted pursuant to the authorization given the President in the FPASA, is intended to effectuate the government policy, indeed the constitutional command, against invidious discrimination. The remedies available to enforce such a measure should not be limited to those discernable by reference to ordinary principles of contract law.

which must be regarded as true for the purpose of this motion), the GSA notice referred to the SAPS facility and ERDA participated in attempts to secure voluntary compliance with Executive Order 11246.

The Court is persuaded by the government's arguments that the notice requirements of 41 C.F.R. § 60–2.2 were satisfied. The "show cause" notice may not have gone out under ERDA's letterhead, but the GSA "show cause" notice and ERDA's participation in attempts to seek voluntary compliance with the Executive Order substantially satisfied the notice requirements.

The Court also questions the need for a "show cause" notice to be issued before the government can commence judicial proceedings—the full text of § 60–2.2 apparently contemplates that a "show cause" notice is required as a condition before holding an *administrative* hearing leading to the cancellation of contracts or debarment from future contracts. But having decided that the requirements of § 60–2.2 were substantially adhered to, the Court need not reach the issue of whether a "show cause" notice must issue before judicial enforcement of the Executive Order is possible. See *United States v. Mississippi Power and Light Co.*, F.Supp. (S.D.Miss., April 21, 1975); *United States v. New Orleans Public Service, Inc.*, F.Supp. (E.D.La., Nov. 13, 1974).

An appropriate Order will be entered in accordance with this memorandum.

### ORDER

AND NOW, to-wit, this 30th day of November, 1976, in consideration of the foregoing memorandum of decision in the above-captioned case, IT IS ORDERED that defendant's motion to partially dismiss the government's complaint be and the same is hereby denied.

It appearing to the Court that the government has filed an amended complaint joining as defendants the unions which represent Duquesne employees, IT IS FURTHER ORDERED that the defendant company's motion to dismiss the complaint for failure to join indispensable parties be and the same is hereby denied as moot.