**INTERSTATE COMMERCE COMMISSION,**
Plaintiff-Appellant,

v.

**BRANNON SYSTEMS, INC., an Alabama corporation, Defendant-Appellee.**

No. 81–3413.

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1982.

Ann P. Van Gaasbeek, Simon W. Oderberg, Oliver H. Miles, Attys., ICC, Fort Worth, Tex., for plaintiff-appellant.

Serby & Mitchell, Bruce E. Mitchell, Atlanta, Ga., for defendant-appellee.

Before BROWN and RANDALL, Circuit Judges, and DUPLANTIER,* District Judge.

JOHN R. BROWN, Circuit Judge:

This case raises the question whether the Interstate Commerce Commission (I.C.C.) may summon forth its arsenal of powers to enforce provisions of a motor carrier lease.

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

Concluding that the I.C.C. has the power to enforce what otherwise would be a plain violation of the regulatory intent, we reverse and remand for further proceedings.

Brannon Systems, an Alabama based motor carrier, operating out of New Orleans, Louisiana, trip leases trucks from companies and individuals who own and operate the vehicles. The I.C.C., contending that Brannon had failed to pay some of its lessors within 15 days after submission of necessary documents, in violation of 49 C.F.R. § 1057.12(g),[1] sought an injunction to enforce payment. Brannon filed a motion to dismiss under F.R.Civ.P. 12(b)(6), arguing that the regulation does not require it to make payment but only to include a provision in the lease promising to do so. The District Court accepted this Catch 22 argument and dismissed. The I.C.C. appeals.

I.

The regulation provides that an equipment transportation lease must contain a provision "[specifying] that payment to the lessor ... shall be made within 15 days." Brannon prevailed below on the theory that the I.C.C. could require it to include such a provision but could not enforce the underlying requirement.

■ We take a different view. Long settled practice confirms the I.C.C.'s power to regulate equipment leasing in the transportation industry. *See American Trucking Associations, Inc. v. United States*, 344 U.S. 298, 308–12, 73 S.Ct. 307, 313–15, 97 L.Ed.

337, 354–56, (1953). 49 U.S.C. § 11702(a)(4)[2] grants the Commission the power to bring a civil injunctive action to enforce its regulations. As the First Circuit stated in *I.C.C. v. B & T Transportation Co.*, 613 F.2d 1182, 1185 (1st Cir. 1980),

> While § 304a confers no affirmative authority on the I.C.C. to seek restitution of overcharges on shippers' behalf, it contains no language expressly or impliedly denying such authority. Under *Porter* [*v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)] and [*Mitchell v. Robert*] *DeMario* [*Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960)], the latter fact, not the former, is dispositive.

613 F.2d at 1185. *See also I.C.C. v. J. B. Montgomery, Inc.*, 483 F.Supp. 279, 280 (D.Colo.1980). As we read *B & T*, the I.C.C. has inherent power to seek injunctive relief to enforce the regulatory process unless the governing statute or regulation expressly denies it such authority.

Looking to the regulatory structure, we conclude that the I.C.C. framed the regulation at issue to assure prompt payment to owner-operators. Concerned that tardy compensation of owner-operators could cause "severe cash flow hardships" resulting in "cessation of operations and disruptions in transportation services," Ex Parte No. MC–43 (Sub-No. 7), *Lease and Interchange of Vehicles*, 129 M.C.C. 700, 706, the I.C.C. promulgated the regulation—"which requires motor carriers to pay their lessors within a specified time"—in line with its

1.  (g) *Payment period.* The lease shall specify that payment to the lessor under permanent or trip lease to the authorized carrier shall be made by the permanent lease carrier within 15 days after submission of the necessary delivery documents and other paperwork concerning a trip in the service of the authorized carrier. The lease shall clearly specify the delivery documents and other paperwork that must be submitted before the lessor can receive payment.

2.  **Enforcement by the Interstate Commerce Commission**

    (a) The Interstate Commerce Commission may bring a civil action—

(4) to enforce this subtitle (except a civil action under a provision of this subtitle governing the reasonableness and discriminatory character of rates), or a regulation or order of the Commission or a certificate or permit issued under this subtitle when violated by a motor carrier or broker providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title.

statutory role of promoting an efficient transportation system. As the I.C.C. declared, "establishment of a mandatory payment period is proper." 131 M.C.C. at 145. "[W]e find that authorized carriers should make payment within 15 days," the agency emphasized. *Id.* at 146. "[I]t is imperative that compensation be received within a short time after completion of the trip." 129 M.C.C. at 711.

■ The I.C.C., then, clearly intended to require prompt payment. The regulation effectuates this goal by requiring the lessors to write it into the leases. While the I.C.C., under the admittedly imperfect language of the regulation, may not have reserved the express authority to enforce, we believe that its inherent powers under 49 U.S.C. § 11702 support its actions. *See B & T, supra.* Surely no one could believe that recital in the lease of a meaningless phrase about payment satisfies the regulation's requirement. Obviously the I.C.C. must have the ability to enforce that provision by whatever means prove necessary, including an action in District Court for an injunction.

The District Court declined to grant an injunction, reasoning that the regulation does not empower the I.C.C. to enforce its provisions. While the decision to grant or deny an injunction lies largely within the District Court's discretion, *see United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953); *Lubbock Civil Liberties Union v. Lubbock Independent School District*, 669 F.2d 1038, 1049 (1982), it is a discretion which must be exercised in the light of a correct understanding of controlling legal principles. Considering the basic error made by the District Court, we remand to the District Court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.