FEDERAL TRADE
COMMISSION, Appellee,

v.

SECURITY RARE COIN · & BULLION
CORP., a Minnesota corporation, Central Coin Exchange, Inc., a Minnesota corporation; William J. Ulrich; and Angela Corporation, a Minnesota corporation, Appellants.

No. 90–5226.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1990.

Decided May 2, 1991.

Robert Brunig, Minneapolis, Minn., for appellants.

Melvin Orlans, F.T.C., Washington, D.C., for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Security Rare Coin & Bullion Corporation, Central Coin Exchange, Inc., Angela Corporation, and William Ulrich (collectively, Security Coin), entities that fraudulently marketed rare coins to consumers for investment purposes, appeal from the district court's [1] order that permanently enjoined Security Coin from making misrepresentations concerning the value of coins offered for sale and its buy-back policy concerning those coins, and from the order granting the monetary equivalent of rescission for customers that Security Coin deceived. We affirm.

## I.

Security Coin was in the business of selling rare coins, a highly technical and specialized commodity unfamiliar to most consumers. Security Coin marketed foreign and domestic coins through telephone solicitation, direct mail, and advertisements in its own financial publications and in national newspapers. Security Coin represented

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

its coins as excellent low-risk investments sold at or near market value with superior liquidity and profit potential. Security Coin sought to overcome consumer resistance and concern about risk by heavily promoting the existence of a "buy-back" policy, under which it would repurchase coins at a discount from its current sales prices. These promotions resulted in substantial sales of coins.

Security Coin graded the value of its own coins and arbitrarily marked up the price of the coins sold to consumers two or three times the wholesale price. Because the coins would have to double or triple in value before any gain could be realized, Security Coin's representations as to their investment value were fraudulent.

The FTC brought an action against Security Coin, alleging that its promotion and sale of coins as low-risk investments during 1985 and 1986 violated section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). The suit sought a permanent injunction and other equitable relief under section 13(b) of the Act, 15 U.S.C. § 53(b). The district court concluded that Security Coin had violated section 5(a) of the Act by misrepresenting that its coin prices reflected their market value, misrepresenting the true nature of its buy-back policy, and misrepresenting the investment value of modern-date dimes, quarters, and half dollars and certain foreign gold coins. The district court entered a permanent injunction against these business practices and awarded equitable monetary relief.

## II.

Security Coin argues several issues on appeal. First Security Coin contends that the district court does not have the power to grant rescission under section 13(b) of the Act. Security Coin next argues that consumer reliance on its buy-back policy was not pleaded by the FTC and should not have been a basis for the district court's decision. Moreover, Security Coin argues that each customer's actual reliance must be proved before the customers can recover any loss caused by Security Coin's deceptive trade practices.

Section 5(a)(1) of the Act, 15 U.S.C. § 45(a)(1), prohibits "unfair or deceptive acts or practices in commerce." To remedy violations of section 5(a), section 13(b) of the Act provides "[t]hat in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." Security Coin points to the language of section 13(b) to support its contention that the district court did not have the power to grant equitable remedies beyond injunctive relief. Security Coin refers to section 5(*l*) of the Act, 15 U.S.C. § 45(*l*), which provides for "other and further equitable relief," to show that when Congress wishes to authorize forms of equitable relief other than an injunction, it knows how to do so.

The language of section 13(b) empowers the district court to grant a permanent injunction in a proper case. Nothing in the wording of the statute expressly precludes ancillary equitable relief. Where Congress allows resort to equity for the enforcement of a statute, all the inherent equitable powers of the district court are available for the proper and complete exercise of the court's equitable jurisdiction, unless the statute explicitly, or "by a necessary and inescapable inference," limits the scope of that jurisdiction. *Porter v. Warner Holding Co.*, 328 U.S. 395, 397–98, 66 S.Ct. 1086, 1088–89, 90 L.Ed. 1332 (1946). *See also Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291–92, 80 S.Ct. 332, 334–36, 4 L.Ed.2d 323 (1960). Applying this principle, several courts of appeals have held that section 13(b) authorizes district courts to grant ancillary equitable relief in proper cases. *F.T.C. v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1026 (7th Cir.1988) (the authority to grant permanent injunctive relief also includes the authority to grant all other equitable relief); *F.T.C. v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1432, 1434 (11th Cir. 1984) (Congress did not limit district court's inherent equitable powers); *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982) (Congress gave the district court authority to grant any ancillary relief necessary to accomplish complete justice). Sec-

tion 13(b) does not limit the full exercise of the district court's inherent equitable power. Finding those decisions persuasive, we adopt their reasoning and hold that section 13(b) empowers district courts to grant the type of ancillary equitable relief entered by the district court in this case.

Security Coin argues that section 19 of the FTC Act, 15 U.S.C. § 57b, is the only authorization for the FTC to obtain consumer redress, and that our decision in *United States v. Hopkins Dodge, Inc.*, 849 F.2d 311, 313 (8th Cir.1988), requires a restrictive reading of the Act. Security Coin argues that we should not permit the FTC to avoid complying with section 19(b)'s procedural requirements for obtaining consumer redress. If the district court is allowed to award other equitable relief under section 13(b), Security Coin argues, section 19 will be rendered superfluous.

We note that section 19(e) provides: "Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law. Nothing in this section shall be construed to affect any authority of the Commission under any other provision of law." There can be no inference from this language that Congress intended in section 19 to restrict the broad equitable jurisdiction granted to the district court by section 13(b). Our decision in *Hopkins Dodge* contains nothing that would require us to give section 13(b) the restrictive reading urged by Security Coin. We held in *Hopkins Dodge* that the FTC could not seek civil penalties under section 5(m)(1)(B) of the Act, 15 U.S.C. § 45(m)(1)(B), until it had complied with the requirements of that provision by first issuing a cease and desist order determining that the practices in question were unfair or deceptive. Here, we consider the power of the district court, not the procedures that the FTC must follow under certain sections of the Act. *Hopkins Dodge* does not require that the FTC proceed under section 19, but merely constrains the FTC to follow the procedures of section 5(m)(1)(B) when seeking relief under that same section.

We conclude that "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. at 291–92, 80 S.Ct. at 334–36. Accordingly, we hold that the district court had the power to grant the relief it did to those consumers harmed by Security Coin's unfair and deceptive trade practices.

### III.

■ Security Coin argues that the district court erred in premising its grant of consumer redress on Security Coin's buy-back policy.

Security Coin points out that the FTC did not allege that Security Coin's buy-back policy was an unfair or deceptive trade practice in violation of section 5(a) of the Act. Security Coin argues that because the FTC failed to state with particularity a circumstance constituting fraud as required by Federal Rule of Civil Procedure 9(b), Security Coin was prejudiced by lack of notice of the fraud claim and the consequent lack of opportunity to offer an adequate defense. We conclude that Security Coin's arguments are without merit.

Security Coin continued to advertise its buy-back policy after it had ceased to honor buy-back requests. As a result, the district court held Security Coin in contempt of the preliminary injunction one and one half years before trial. Security Coin fails to recognize that the issue was within the ambit of the FTC's pleadings, and that in any event was tried by consent of the parties. Fed.R.Civ.P. 15(b). Moreover, the district court did not premise consumer redress on misrepresentations of the buy-back policy alone, but on a host of false and misleading statements that induced consumers to rely upon Security Coin's unfair and deceptive business.

### IV.

■ Security Coin argues that the district court's award of consumer redress in

the form of the monetary equivalent of rescission was inappropriate because actual reliance on false and misleading statements was not proved for each consumer who is to be reimbursed. Security Coin further argues that the monetary equivalent of rescission is an inequitable remedy under the circumstances of this case.

■ To satisfy the reliance requirement in actions brought under section 13(b) of the Act, the FTC need merely show that the misrepresentations or omissions were of a kind usually relied upon by reasonable and prudent persons, that they were widely disseminated, and that the injured consumers actually purchased the defendants' products. *F.T.C. v. Amy Travel Service, Inc.,* 875 F.2d 564, 573 (7th Cir.1989); *F.T.C. v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282, 1293 (D.Minn.1985). Security Coin made credible and persuasive misrepresentations concerning the coins' allegedly low prices, high profit potential, and low risk. These are key factors in a consumer's decision to purchase coins for investment purposes. We agree with the district court and the FTC that it was reasonable for consumers entering this specialized and technical market to rely on the representations of an apparently reputable firm staffed by experts and specializing in such investments.

Security Coin relies on our decision in *Vervaecke v. Chiles, Heider & Co.,* 578 F.2d 713 (8th Cir.1978) to argue that proof of subjective reliance by each investor is required for recovery of the monetary equivalent of rescission. We reject Security Coin's argument. It would be virtually impossible for the FTC to offer such proof, and to require it would thwart and frustrate the public purposes of FTC action. This is not a private fraud action, but a government action brought to deter unfair and deceptive trade practices and obtain restitution on behalf of a large class of defrauded investors. It would be inconsistent with the statutory purpose for the court to require proof of subjective reliance by each individual consumer. *F.T.C. v. Kitco of Nevada, Inc.,* 612 F.Supp. at 1293.

■ The district court has broad remedial discretion to grant an appropriate form of equitable relief under section 13(b) of the Act. Where it is impossible or infeasible to return the specific property at issue, thus rendering true rescission impossible, a money substitute may take the place of the specific property to be returned. *Nelson v. Serwold,* 576 F.2d 1332, 1339 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). The monetary equivalent of rescission is the difference between the amount paid for the property and its current market value. To adhere to the model of true rescission, where the property is returned on the judgment date, the monetary value of the property should be determined as of the judgment date or the date of the disclosure of the fraud. Here, Security Coin never acknowledged the fraud, thus the judgment date and the date of disclosure of the fraud are effectively the same.

■ We agree with the district court that the monetary equivalent of rescission is appropriate in the present case because Security Coin is out of business and some 9,000 consumers are entitled to relief. Contrary to Security Coin's contention, it is unlikely that some customers might profit unfairly, either because they have already sold their coins or because they will be permitted to retain coins that may increase in value, because the market for the coins was essentially a product of Security Coin's own dealings and fell dramatically after Security Coin's collapse. That Security Coin becomes an "insurer of the market" is an inherency of rescission, whether actual or monetary, and to put Security Coin into this position is not inequitable. The innocent customers' losses exceed Security Coin's gains, it may be true, but we conclude that restoration of the victims of Security Coin's con game to the status quo ante was not an abuse of the district court's discretion.

The decision of the district court is affirmed.