417 F.2d 370
 OPERATING ENGINEERS LOCAL UNION NO. 3, an unincorporated association, the International Union of Operating Engineers, an unincorporated association, Harold L. Bowen, James F. Church, P. H. McCarthy, Jr., et al., Appellants,
v.
B. R. BURROUGHS, Appellee.
 No. 22786.
 United States Court of Appeals Ninth Circuit.
 October 1, 1969.
 Rehearing Denied November 14, 1969.
 
 P. H. McCarthy, Jr. (argued), of McCarthy, Johnson & Miller, San Francisco, Cal., for appellant.
 Merrill Schwartz (argued), of Stark, Simon & Sparrowe, Oakland, Cal., for appellee.
 Before ELY and CARTER, Circuit Judges, and SMITH,* District Judge.
 RUSSELL E. SMITH, District Judge.
 We are here concerned with the extent to which the "protection of the right to sue" section of the "Bill of Rights of Members of Labor Organizations"[1] limits the power of a union to discipline its members for suing a union and its officers.
 The plaintiff and appellee, B. R. Burroughs (Burroughs) was a member of appellant, Operating Engineers Local Union No. 3 (Local), a local union affiliated with the appellant, International Union of Operating Engineers (International). The Local conducted an election of officers in August of 1966. The ballots were mailed August 10, 1966 and were opened August 26, 1966. Before the election Burroughs complained of the election procedures to various officers and committees of the Union, and on August 25th secured an order restraining the opening of the ballot box from a Superior Court in California. On September 8, 1966, the Superior Court dissolved the temporary restraining order, and on the 9th of September Burroughs secured a restraining order from a United States District Court. This order was dissolved on September 13th and the action was dismissed as moot on September 14, 1966.
 Subsequently Burroughs was charged with violations of Article XVII of the Constitution of the International[2] for filing the state and federal actions. He was tried by the Local and fined. Upon appeal to the International the "penalties" imposed were "affirmed" but their enforcement was stayed for a period of three years, at the end of which time they were to be vacated if Burroughs did not in the interim violate any provisions of Article XVII, Section 4, of the International Constitution.
 This action was brought by Burroughs to restrain the enforcement of the penalties and for actual and punitive damages. The District Court granted plaintiff's motion for a partial summary judgment, adjudging the discipline imposed on Burroughs by the Union to be void and enjoining the Union from in any way disciplining Burroughs for having filed the actions in state and federal court.
 The first question posed by this appeal is whether a union may discipline a member who initiates a court action against it or its officers without spending at least four months in the exhaustion of the Union's internal hearing procedures. The answer to this question turns upon the meaning of 28 U.S.C. § 411(a) (4).
 In Industrial Union of Marine and Shipbuilding Workers of America, AFLCIO v. N. L. R. B., 379 F.2d 702 (3 Cir. 1967), the Court of Appeals for the Third Circuit specifically held that section 411 (a) (4) gave the Union authority to require that the members resort to reasonable intra-union procedures. On appeal the Supreme Court, speaking through Mr. Justice Douglas, just as specifically rejected the position of the Third Circuit and said:
 
 
 1
 "We conclude that `may be required' is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union. We read it, in other words, as installing in this labor field a regime comparable to that which prevails in other areas of law before the federal courts, which often stay their hands while a litigant seeks administrative relief before the appropriate agency." National Labor Relations Board v. Industrial Union of Marine-Shipbuilding Workers of America, 391 U.S. 418 at 426, 88 S.Ct. 1717, 1723, 20 L.Ed.2d 706 (1968).[3]
 
 
 2
 Once it is established that the proviso in 29 U.S.C. § 411(a) (4) is a policy guide for the courts and not a grant of authority to the union, and we think that at least this much is established by Marine Workers, supra, then for the purpose of examining the limits of permissible union discipline we are left with these words:
 
 
 3
 "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency." 29 U.S.C. § 411(a) (4).
 
 
 4
 Appellants urge that in this case the rights which Burroughs sought to protect were member rights as distinguished from employee rights, that the subject matter of the state and federal court actions concerned intra-union matters and did not touch the public domain, and that the actions in the state and federal courts were not brought in good faith,[4] and that for each or all of these facts Burroughs should be denied relief. Although appellant's position is not foreclosed by existing case[5] authority we do not adopt it.
 
 
 5
 Section 411(a) (4) speaks of — "an action in any court." The word "action" is in no way limited and there is nothing in the Act which distinguishes between suits involving member[6] as opposed to employee rights, between suits involving internal as opposed to external union problems, or between suits brought in good faith as opposed to those brought in bad faith. The right to sue is something less than fully protected[7] by the "protection of the right to sue" section of the "Bill of Rights of Members of Labor Organizations" if a member of a union is required to make a pre-suit determination that the union may not discipline him for bringing it because upon a post-suit examination of the matter it will appear to some union official or judge that the member's action was brought in good faith, that the suit concerned affairs of the union touching some part of the public domain affected by the Act[8] rather than internal union affairs, or that the rights sought to be protected were "employee" rather than "member" rights. We believe that the language of the Act requires us to reject the considerations urged upon us by appellants and that the policy of the Act is served by such rejection.
 
 
 6
 What is said here does not deny the Union freedom of self-regulation. Courts have refused to meddle in union management and we do not suggest that they should not continue to refuse. We agree with Mr. Justice Harlan, who said in a concurring opinion in Marine Workers:
 
 
 7
 "Finally, it is appropriate to emphasize that courts and agencies will frustrate an important purpose of the 1959 legislation if they do not, in fact, regularly compel union members `to exhaust reasonable hearing procedures' within the union organization. Responsible union self-government demands, among other prerequisites, a fair opportunity to function." N. L. R. B. v. Marine Workers, 391 U.S. at 429, 88 S.Ct. at 1724.
 
 
 8
 Likewise, we do not condone the use of lawsuits for harassment purposes and do not suggest that a union would not have all of the rights which the law gives to those who are so harassed.[9] What we do say is that the freedom to sue is precious; that the winner in a lawsuit should not have the right to discipline the loser; that the potential suitor should not be subjected to the threat of such discipline; and that by virtue of § 411(a) (2) these principles now apply to labor unions.
 
 
 9
 29 U.S.C. § 412 provides that rights secured by the Bill of Rights may be protected by an action in the district court for such relief, including injunctions, as may be appropriate. Given this statute, may a court refuse an injunction in an otherwise proper case on the ground that the plaintiff has unclean hands? If we are correct in our conclusions that there are no exceptions to the law forbidding labor unions from disciplining their members for bringing actions, then the attempts to discipline Burroughs in this case were illegal regardless of his good faith or lack of it. In this case the duty to enjoin the illegal acts stems from a specific statutory grant and not from the general equitable powers of the court. For the same reasons that we refuse to read any limitations into § 411(a) (4), we refuse to read limitations into § 412.
 
 
 10
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation
 
 
 [1]
 "(a) Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by-laws."
 * * * * *
 "(4) No labor organization shall limit the right of any member thereof to institute an action in any court or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."
 "(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." 29 U.S.C. § 411(a) (4) & (5) (b).
 
 
 [2]
 "No suit or other action at law or equity shall be brought in any court and no proceeding shall be initiated before any administrative agency by any member, officer or subdivision of the International Union of Operating Engineers until and unless all rights, remedies and reasonable provisions for hearing, trial and appeal within the Organization shall have been properly followed and exhausted by the member, officer or subdivision complaining. This provision shall only require resort to internal remedies for a period not exceeding four (4) months. Any member violating this provision, shall, in addition to the penalties prescribed in the Constitution and Ritual, be subject to a fine equal to the full amount of the costs incurred in the defense of any such action by the Union, together with such costs additional as the court may fix or assess against said member." Section 4, Article XVII, Constitution of the International Union of Operating Engineers
 
 
 [3]
 This conclusion had been reached by the Courts of Appeals for the District of Columbia, and the Seventh Circuit. Roberts v. N.L.R.B., 121 U.S.App.D.C. 297, 350 F.2d 427 (1965); Ryan v. I.B.E.W., 361 F.2d 942 (7 Cir. 1966)
 
 
 [4]
 The District Court concluded that the doctrine of "clean hands" did not preclude relief. If there were a relevant issue of good faith, the summary judgment could not stand in this case because conflicting inferences could be drawn from the record
 
 
 [5]
 The rights involved in Marine Workers were employee rights protected by § 7 of the National Labor Relations Act (29 U.S.C. § 157) and the court does say: "Thus § 8(b) (1) (A) assures a union freedom of self-regulation where its legitimate internal affairs are concerned. But where a union rule penalizes a member for filing an unfair labor practice charge with the Board other considerations of public policy come into play." Marine Workers,supra, 391 at 424, 88 S.Ct. at 1721.
 And: "We also conclude, for reasons stated earlier in this opinion, that where the complaint or grievance does not concern an internal union matter, but touches a part of the public domain covered by the Act, failure to resort to any intra-union grievance procedure is not ground for expulsion from a union." Marine Workers supra, at 428, 88 S.Ct. at 1724.
 In Ryan v. International Brotherhood of Electrical Workers, 361 F.2d 942 (7 Cir. 1966) the basic controversy did not relate to an exclusively internal union matter, and in Roberts v. N.L.R.B., 121 U.S.App.D.C. 297, 350 F.2d 427 (1965), the rights involved were employee rights. Both Ryan and Roberts suggest that the element of good faith might be considered if the suits were brought to harass.
 
 
 [6]
 "411(a) (4) uses the word "member", not "employee"
 
 
 [7]
 See the concurring opinion of Mr. Justice Harlan in N.L.R.B. v. Marine Workers, 391 U.S. 418, 428, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); Ryansupra, note 3.
 
 
 [8]
 Even after the fact this problem is troublesome. See the differing opinions in local 283 v. United Automobile Aircraft, etc., 145 NLRB 1097 (1964)
 
 
 [9]
 "Authorities to show that equity will interfere to restrain irreparable mischief, or to suppress oppressive and interminable litigation, or to prevent multiplicity of suits, is unnecessary, as that proposition is universally admitted." Insurance Company v. Bailey, 13 Wall. 616, 20 L.Ed. 501 (1871)
 
 
 ELY, Circuit Judge (dissenting):
 
 11
 I respectfully dissent. The majority opinion surely cannot survive, since it tends to establish almost complete immunity for union members who harass their unions and disrupt union affairs with vexatious lawsuits. The majority, in cases like this, would divest the District Courts, sitting in equity, of power to deny equitable relief, however unclean might be the hands of the union member seeking such relief. I refer specifically to footnote 4 of the majority opinion, which reads, "If there were a relevant issue of good faith, the summary judgment could not stand in this case because conflicting inferences could be drawn from the record." My Brothers then decide that the faith of the plaintiff, good or bad, in filing his "eleventh-hour" lawsuits was not a relevant issue in this equitable proceeding, and to me, the conclusion is almost incredible!
 
 
 12
 The issue is clearly framed: Did Congress, in granting jurisdiction to issue injunctions for the protection of the legitimate rights of union members, intend to abolish a defense that has been recognized in courts of equity since their inception? I have found nothing in the legislative history of the Act[1] that indicates the slightest Congressional intention to effect such a revolutionary abolition of historical judicial power. Nor can I believe that the Congress would have chosen to manifest such an intention and work such a dramatic consequence by an approach sub silentio. Without a clear legislative mandate, the majority denies several hundred years of judicial history to reach a result that I cannot accept.
 
 
 13
 The equitable remedy of injunctive relief historically has been available only when a set of extraordinary circumstances renders relief by way of damages inadequate to protect the rights of the plaintiff. The remedy has always been jealously guarded from improper use, equity courts taking the position that circumstances requiring extraordinary relief cannot exist when the plaintiff himself has engaged in meretricious conduct in relation to the controversy. It has been axiomatic that equitable relief will not be granted in a case wherein the plaintiff comes to the court with unclean hands.
 
 
 14
 The majority reasons that the traditional equitable principle is not applicable to this action, since the District Court's jurisdiction arose from a specific statutory grant and not from the general equitable powers of the court. As far as I know, however, the fact that a remedy may be statutorily prescribed in general terms has never before been held to divest an equity court of its power to apply equitable rules and policy in deciding whether, in a particular set of circumstances, that remedy is appropriate. This is not, for example, a case in which a jurisdictional statute specifies particular remedies for a particular action. In such a case, a court might be disempowered to add equitable relief to specified statutory remedies, or in lieu thereof, See, e. g., Herbold Laboratory, Inc. v. United States 413 F.2d 342 (9th Cir. June 26, 1969). Here the pertinent statute[2] is very similar to that involved in Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). In Mitchell the Supreme Court held that sections 15(a) (3) and 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 215(a) (3), 217, which granted the District Courts jurisdiction to enjoin the discharge of employees for having filed actions against their employers, carried with them the full equitable powers of the District Courts. The provisions there in question are comparable to those with which we are here concerned, those guaranteeing a member's right to sue his union. The question involved in Mitchell was whether the District Courts had been disempowered, by reason of the Fair Labor Standards Act, from rendering equitable relief beyond the injunctive power specifically conferred. In answering the question in the negative, the Supreme Court principally relied upon language found in Porter v. Warner Holding Co., 328 U.S. 395, 397, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946):
 
 
 15
 "* * * the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. `The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.' Brown v. Swann, 10 Pet. 497, 503, 9 L.Ed. 508." (Emphasis added.)
 
 
 16
 The question put at the beginning of the last paragraph of the majority opinion is whether injunctive relief should be denied in "an otherwise proper case" because of the plaintiff's unclean hands. This is not merely a rhetorical question. In my judgment, it is one that points out the majority's inconsistency, for it is the obligation of the court to determine what is a proper case under the statute. See Mitchell v. Robert DeMario Jewelry, Inc., supra.
 
 
 17
 Determining what is a proper case for the statutory remedy requires construing the statute in light of the general scheme which it portrays and its purposes. The basic purpose of the Act was to ensure democracy within union organizations. See, e. g., S.Rep.No.187, H.Rep.No.741, Conference Rep.No.1147, 86th Cong. 1st Sess. (1959). It is fundamental, however, that no democracy can function if its processes may constantly be disrupted and delayed. Therefore, the interests of the union and its members, as well as those of our society generally, in maintaining orderly union processes are as important as the right of an individual member to challenge those processes. Phillips v. Osborne, 403 F.2d 826 (9th Cir. 1968).
 
 
 18
 The Supreme Court recognized the interests of the unions in NLRB v. Industrial Union of Marine Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1969), the principal case upon which appellee relies, when it noted that "§ 8(b) (1) (A) assures a union freedom of self-regulation where its legitimate internal affairs are concerned." In addition to the protection provided by § 8(b) (1) (A) we should take note that the statute here in question simply provides that "It shall be unlawful for any labor organization * * * to * * * discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. § 529. If a union member abuses a right by exercising it to inflict vexatious, vindictive harassment, an equity court should no longer protect that right. Surely, the statute must afford room for properly conducted disciplinary proceedings against a member who abuses his rights by exercising them in bad faith.
 
 
 19
 The majority is concerned that to allow the defense of unclean hands in this action would have the ultimate effect of "chilling" the exercise of the member's right to sue by forcing the potential plaintiff to make a gambling decision based on the probability of whether it will later be determined that he acted in good faith. I am not much disturbed by this possibility, however, since the potential plaintiff could be assured that a finding of good faith would necessarily follow a determination that he had a reasonable basis for belief in his chances of legal victory.[3] I am much more concerned with the possibility that a malicious disgruntled member could force his union to waste the resources of his fellow members in defending unmeritorious lawsuits instituted at the last moment to thwart or delay a scheduled election.
 
 
 20
 The majority suggests that the problem of abuse is amply covered by the availability to the union of injunctive relief to forestall vexatious or oppressive suits. I see this rationale as far-fetched, based upon the unwarranted assumption that the union will always be knowledgeable, in advance, of all litigious courses which a disgruntled member might intend, or choose, to follow.[4] Moreover, the union could not ordinarily seek an injunction in such a case except to prevent the member from undertaking to relitigate issues that have already been decided. See Clinton v. United States, 297 F.2d 899 (9th Cir. 1961); Helene Curtis Industries v. Sales Affiliates, 247 F.2d 940 (2d Cir. 1957). Furthermore, courts will not enjoin the pursuit of relitigation of formerly adjudicated issues in an area of law that is unsettled. See, e. g., Texaco, Inc. v. Fiumara, 232 F.Supp. 757 (E. D.Pa.1964). These restrictions evidence extreme reluctance on the part of courts to grant injunctions against the institution or continuation of litigation. In view of the statutory guarantee of the member's right to sue, an injunction prohibiting, initially, the exercise of that right, as the majority suggests, is an anomalous prospect indeed!
 
 
 21
 On the other hand, it is likely that any relief that the union might have at law would be woefully inadequate. Until quite recently, the cause of action for malicious prosecution has been limited to wrongs perpetrated by means of the criminal processes. See generally 1 F. Harper & F. James, Torts § 4.8, at 326 (1956); C. Prosser, Torts, § 99, at 662 (1959). Some jurisdictions have now begun to recognize a cause of action for the malicious prosecution of civil actions, but it is doubtful that a union's recovery of a money judgment would be meaningful in the context of a dispute with one of its ambitious and disappointed members.[5] It is not unreasonable to assume that a judgment-proof member could conceive it to be advantageous to him to pursue a course of harassment, hoping to extort his desired result. I cannot join in an opinion that appears to encourage such a course of action.
 
 
 22
 It is inconceivable to me that Congress could have intended to strip the District Courts, sitting in equity, of their historical power to do equity in the most exalted sense. I keenly regret that the majority has opened the way for a malicious and disruptive member to sue his union for the purpose of harassment and yet avoid union discipline despite his obviously unclean hands. I respectfully submit that the majority's conclusion defeats the fundamental goal of the Act, the assuring of the equitable functioning of democratic union processes.
 
 
 23
 If the majority is correct in its view that the pleadings and affidavits sufficiently presented a genuine dispute concerning the doctrine of unclean hands, then I strongly disagree with its conclusion that the District Court had no power to apply the defense. I would therefore remand the cause for the District Court's determination, in a plenary proceeding, of whether the appellee, by his own conduct, had forfeited any right to the favor of equitable relief.[6]
 
 
 
 Notes:
 
 
 [1]
 Labor-Management Reporting & Disclosure Act of 1959, 29 U.S.C. § 401 et seq
 
 
 [2]
 The jurisdiction of the District Court was based on 29 U.S.C. § 412:
 "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."
 
 
 [3]
 A sound analogy can be drawn from the law of torts involving malicious prosecution of civil suits. The defendant in a malicious prosecution case must be shown to have had no probable cause for filing his original suit. Lack of probable cause must be "clearly proven."E. g., Standley v. Western Auto Sy. Co., 319 S.W.2d 924 (Mo.App.1959); Virtue v. Creamery Package Mfg. Co., 123 Minn. 17, 142 N.W. 930, L.R.A.1915B, 1179 (1913). Also, reliance on the advice of counsel is conclusive on the issue of probable cause if counsel was informed as to all the material facts. E. g., Harter v. Lewis Stores, Inc., 240 S.W.2d 86 (Ky.1951).
 
 
 [4]
 For this type of injunctive action effectively to protect a union, virtual omniscience would be required of both the union and the courts. An injunction against litigation must specify the parties and the subject matter of the proposed lawsuitSee American Electrotype Co. v. Kerschbaum, 70 App.D.C. 241, 105 F. 2d 764 (1939). With the wide range of subjects open to a litigious member, it would be virtually impossible to frame an injunction with the requisite specificity without rendering it impotent for the purpose that it would be hoped to serve. A practical objection to the majority's approach is that the union would probably gain no greater advantage, economic or otherwise, by undertaking to obtain an injunction than by waiting for the frivolous lawsuit against it and defending on the merits. The expense of an equitable proceeding, with the subtle factual and legal issues involved, could easily exceed the cost of defending groundless law suits. An injunction should never issue unless it is clearly demonstrated that it will benefit the party who seeks it. See, e. g., Simms v. Greene, 161 F.2d 87 (3d Cir. 1947).
 
 
 [5]
 The elements of the cause of action make recovery extremely difficult. The original action or actions must have been instituted out of spite or malice and without probable cause. As noted earlier, probable cause in this context may be satisfied by any semblance of a sound caseSee note 3, supra. Some jurisdictions limit the cause of action so that it reaches only repeated suits filed solely for the purpose of harassment. See Soffos v. Eaton, 80 U.S.App.D.C. 306, 152 F.2d 682 (1945).
 
 
 [6]
 An enlightening decision in the area of union disciplinary procedures, rendered on August 25th of this year, has just now, and after the above was written, come to my attention. International Molders' & Allied Workers Union, Local No. 125, 178 NLRB No. 25, 1969 CCH Lab.L.Rep. ¶ 21,164 (1969). There, the Board ruled that a union member who filed a decertification petition may be expelled from the union but cannot be fined. The Board carefully differentiated between discipline for filing unfair labor practice charges, as inMarine Workers, and discipline based on petition for decertification. It then cited our court's opinion in Price v. NLRB, 373 F.2d 443 (9th Cir. 1967), for the proposition that a union can expel a member for filing a petition to decertify. The rationale of Price was that the petition of decertification attacked the very existence of the union and that the member should not be able to do this while remaining a member and privy to his union's election campaign and strategy.
 In International Molders', the Board did not interpret Marine Workers as requiring that it abandon its attitude toward decertification petitions. In addition to the reasoning in Price, noted above, the Board pointed out that suspension or expulsion was the most effective means of defense against the decertification petition and that the member's right of access to the Board should, on balance, give way to the union's right of self-defense. On the other hand, the Board concluded that a fine alone served no adequate defensive purpose, since the member would retain his advantageous position for in-fighting. Interestingly enough, the dissenting opinion in the case does not challenge the majority's conclusion that Price remains viable. Instead, it urges that the union should also be empowered to fine its members for filing decertification petitions.
 The analogy to our present situation is apparent. Here, Burroughs' actions threatened, and undertook to frustrate, the union's ability to conduct an election, without which the union could not function as a truly representative organization. The sanction was, by its terms, designed as self-defensive, and Burroughs was not divested of his membership. The disciplinary order imposing the fine was suspended upon the condition that Burroughs not file another similar suit within the next three years. Such a conditional sanction can only be interpreted as defensive, and had the union eventually sought to impose it because of the good faith instituting of a non-frivolous action, the courts could have properly enjoined the imposition.