RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0323P (6th Cir.)
File Name: 00a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LARRY F. HROMETZ,
    *Plaintiff-Appellant/*
    *Cross-Appellee,*

    *v.*

LOCAL 550, INTERNATIONAL
ASSOCIATION OF BRIDGE
CONSTRUCTION AND
ORNAMENTAL
IRONWORKERS, and RUSSELL
NEFF and WILLIAM V.
SHERER, in their personal and
individual capacities;
INTERNATIONAL
ASSOCIATION OF BRIDGE,
STRUCTURAL AND
ORNAMENTAL
IRONWORKERS,
    *Defendants-Appellees/*
    *Cross-Appellants.*

Nos. 98-3355/
3407/3408

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 96-00965—Peter C. Economus, District Judge.

Argued: August 11, 2000

Decided and Filed:  September 14, 2000

Before:  KEITH, COLE, and GILMAN, Circuit Judges.

_____

**COUNSEL**

ARGUED:  Edward L. Gilbert, Akron, Ohio, for Appellant. Cornelius J. Baasten, GREEN, HAINES, SGAMBATI, MURPHY & MACALA, Canton, Ohio, Eben O. McNair, IV, SCHWARZWALD, ROCK & MCNAIR, Cleveland, Ohio, for Appellees. **ON BRIEF:** Edward L. Gilbert, Akron, Ohio, for Appellant.  Ronald G. Macala, GREEN, HAINES, SGAMBATI, MURPHY & MACALA, Canton, Ohio, Eben O. McNair, IV, Timothy J. Gallagher, SCHWARZWALD, ROCK & MCNAIR, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

   RONALD LEE GILMAN, Circuit Judge.  Larry Hrometz filed a municipal-court suit against his local union in a dispute over his bid to purchase one of the union's damaged automobiles.  The union then expelled Hrometz because, by proceeding directly to litigation without first exhausting his internal union remedies, he had violated the union's constitution.  Hrometz responded by filing the present suit in federal court against both his local union and its international parent, claiming that his expulsion violated his right to sue as provided by Section 101(a)(4) of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA) (codified at 29 U.S.C. § 411(a)(4)).  The district court granted summary judgment in favor of both the local and parent unions.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** with instructions for the district court (1) to enter an order directing the union to reinstate Hrometz, (2) to enjoin enforcement of the disciplinary

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** with instructions for the district court (1) to enter an order directing Local 550 to reinstate Hrometz, (2) to enjoin enforcement of the disciplinary measures contained in sentences three and four of Article XIX, Section 4 of the union's constitution, and (3) to determine the extent to which Hrometz may be entitled to monetary damages.

measures contained in sentences three and four of Article XIX, Section 4 of the union's constitution, and (3) to determine the extent to which Hrometz may be entitled to monetary damages.

### I.  BACKGROUND

#### A.  Internal union proceedings

Hrometz joined the Local 550 branch of the International Association of Bridge, Structural, and Ornamental Ironworkers (the International) in 1970.  In December of 1993, an automobile owned by Local 550 was severely damaged in a collision.  Local 550 decided to auction off the damaged car to its members by way of sealed bids.  Hrometz alleges that he was the only member to submit such a bid, a fact contested by Local 550.  The automobile was ultimately sold to another Local 550 member.

In March of 1994, Hrometz filed a suit against Local 550 in the Municipal Court of Canton, Ohio, alleging that Local 550 had breached its contract with him by selling the automobile to someone else.  Local 550 attempted to remove the action to federal court.  The district court denied jurisdiction, finding that Hrometz was asserting a pure breach of contract claim that did not implicate any federal labor law.  Upon remand, the Municipal Court determined that Local 550 had "acted within its authority . . . in disposing of the automobile," and therefore ruled in favor of the union.  Prior to filing suit over the automobile, Hrometz had made no attempt to invoke internal union grievance procedures.

In May of 1995, a Local 550 official filed a charge with the union president against Hrometz, alleging that Hrometz had violated Article XIX, Section 4 of the union's constitution by filing suit without first pursuing his internal union remedies.  Article XIX, Section 4 of the constitution provides in pertinent part as follows:

No suit or other action at law or equity shall be brought in any court . . . unless all rights, remedies and reasonable provisions for hearing, trial and appeal within the International Association shall have been properly followed and exhausted . . . . This provision shall require resort to internal remedies for a period not exceeding four (4) months. Violation of this Section shall be sufficient cause for expulsion from membership in this International Association and its Local Unions. In addition, any officer, member or Local Union violating this provision shall be subject to a fine equal to the full amount of the costs incurred in the defense of any such action . . . .

Hrometz was tried in a disciplinary hearing before a Local 550 "jury" and found guilty of violating the exhaustion requirement. The jury recommended that Hrometz be expelled from Local 550 and fined $5,263 for the legal fees incurred by the union in defending Hrometz's suit.

Hrometz appealed the decision to the International's General Executive Board (GEB). The GEB assigned a representative, Robert Spiller, to investigate. Spiller recommended that the jury verdict be affirmed. In support of his conclusion, Spiller recited a list of findings based upon a two-hour interview with Hrometz and discussions with two union officials. Spiller reported that Hrometz "dislikes the entire operations of Local No. 550," "feels that he is right on any issue," "believes that the officers of Local No. 550 have conspired against him," and "is totally obsessed with the fringe benefit funds." Based on discussions with the two union officials, Spiller further determined that Hrometz "disrupted the membership meetings to the point the attendance has dropped off," "had to be arrested in one instance for his refusal to leave an Executive Board Meeting," and "threatened Business Manager [William] Sherer with a firearm." None of these asserted facts were raised during Hrometz's disciplinary hearing before Local 550.

note, however, Local 550's unrefuted evidence that it has allowed Hrometz to continue using its hiring hall since his expulsion. There thus exists a serious question as to whether Hrometz has incurred any economic loss at all as a result of the actions taken against him.

### D.  Alleged due process violations on the part of the GEB

Hrometz claims that he was denied a fair hearing on appeal before the GEB by the consideration of new evidence against him that was not presented before the union jury. Because we have concluded that Hrometz is entitled to summary judgment based on the defendants' violation of his right to sue under the LMRDA, we need not reach this issue.

### E.  Local 550's cross-appeal

Local 550 objects to what it construes as an implicit finding on the part of the district court that Local 550 was *solely* responsible for Hrometz's expulsion, to the exclusion of the International. The language in the district court's opinion that Local 550 points to is as follows: "[T]his court concludes that Plaintiff's expulsion from membership, and the ratification of said action by the International, did not violate 29 U.S.C. § 411 or 412."

We find nothing in the above language to indicate that the district court assigned sole responsibility for Hrometz's expulsion to Local 550. Indeed, the latter half of the quoted sentence, referencing the International's ratification of Hrometz's expulsion, makes clear that the district court viewed the International as a responsible party. Moreover, the International has not argued at any point in this litigation that it is not at least partially responsible for Hrometz's expulsion. We therefore see no need to rule on what we perceive to be a nonexistent issue.

disputes which can be resolved privately."). Pursuant to *Marine Workers*, however, the appropriate enforcement mechanism for the exhaustion requirement is not to subject a wayward member to discipline, but rather for courts and administrative boards to simply decline to hear unexhausted claims. *See Marine Workers*, 391 U.S. at 426; *Int'l Org. of Masters, Mates & Pilots v. Prevas*, 175 F.3d 341, 345 (4th Cir. 1999) ("[N]othing in our holding prevents a court from exercising its discretion to dismiss the suit of a union member who has failed to exhaust internal union remedies. Indeed, 'it is appropriate to emphasize that courts and agencies will frustrate an important purpose of [the LMRDA] if they do not, in fact, regularly compel union members to exhaust reasonable hearing procedures within the union organization.'" (quoting *Marine Workers*, 391 U.S. at 429 (Harlan, J., concurring)) (second set of internal quotation marks omitted)).

We therefore reverse the district court's grant of summary judgment in favor of the defendants. Because none of the relevant facts are contested, and the defendants concede that they expelled Hrometz for filing suit prior to exhausting his internal union remedies, we remand the matter to the district court with instructions to enter an order directing Local 550 to reinstate Hrometz and to enjoin the defendants from enforcing the disciplinary measures contained in sentences three and four of Article XIX, Section 4 of the union's constitution. *Cf. Prevas*, 175 F.3d at 345 (invalidating the provision of a union constitution that allowed the union to recover damages from a member who filed suit against the union without first exhausting his union remedies); *Pawlak*, 628 F.2d at 831 (enjoining a union from enforcing the section of its constitution that prescribed fines for filing court actions prematurely).

In his complaint, Hrometz sought compensatory damages of $1,000,000, punitive damages of $2,000,000, and attorneys' fees. Because the district court did not consider the issue of damages, we remand for a hearing on this matter. We

After considering Spiller's recommendations, the GEB decided to affirm Hrometz's expulsion. It did, however, rescind the fine. The GEB notified Hrometz of its decision by letter dated November 15, 1995. Pursuant to the union's constitution, Hrometz then had the right to two further internal appeals—first to the General Executive Council (GEC), and finally to the International Union Convention. Hrometz, however, did not seek further review within the union framework.

## B.    Federal court proceedings

On May 9, 1996, Hrometz filed suit in federal court against the International, Local 550, and two union officials—Russell Neff, president of Local 550, and William Sherer, Local 550's business manager. (Hereinafter, Local 550 and its two officials will be collectively referred to as Local 550.) Hrometz alleged that, by expelling him solely because he filed suit in small claims court, the defendants violated his rights as provided in the LMRDA. *See* 29 U.S.C. §§ 411(a), 412.

Local 550 moved for summary judgment, arguing that Hrometz's expulsion was appropriate because his complaint about the automobile sale was purely an internal union matter that required him to first pursue his remedies within the union grievance process before commencing a lawsuit against the union. The International also moved for summary judgment, urging the district court to decline to hear Hrometz's case because he did not exhaust his internal union remedies before bringing the federal suit.

The magistrate judge to whom the case was referred recommended that both summary judgment motions be denied, based in part on the erroneous conclusion that the union's constitution did not permit the union to discipline a member for filing suit against it. This oversight was corrected by the district court, which observed that Article XIX, Section 4 of the constitution granted the union the authority to expel members who filed suit before exhausting their internal

remedies. Based on that section, the district court granted summary judgment in favor of both defendants.

Hrometz filed a timely notice of appeal. Both Local 550 and the International filed independent cross-appeals on discrete points that will be discussed below.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g.*, *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. Hrometz properly exhausted his union remedies before filing suit in federal court

On cross-appeal, the International argues that the district court should have required Hrometz to first exhaust his internal union remedies before filing suit in federal court to protest his expulsion. A union jury expelled Hrometz on August 8, 1995. Hrometz appealed the verdict to the GEB on August 21, 1995. On November 15, 1995, the GEB affirmed Hrometz's expulsion. At that point, Hrometz had spent slightly over three months pursuing his internal union remedies. He then abandoned the internal union process and subsequently filed suit in federal district court in May of

Although the interpretation given to the LMRDA in *Marine Workers* is technically dicta, its import is clear and therefore binding upon this court. *See United States v. Oakar*, 111 F.3d 146, 153 (D.C.Cir.1997) ("Carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." (citation and internal quotation marks omitted)). Hrometz thus maintains that *Marine Workers* wholly refutes the defendants' contention that the four-month exhaustion requirement in § 101(a)(4) entitled Local 550 to discipline Hrometz for his failure to exhaust.

We agree. As the Ninth Circuit observed in *Burroughs*:

Once it is established that the proviso in 29 U.S.C. [§] 411(a)(4) is a policy guide for the courts and not a grant of authority to the union, . . . then for the purpose of examining the limits of permissible union discipline we are left with these words: "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency."

*Burroughs*, 417 F.2d at 373. Pursuant to *Marine Workers*, then, a labor union may not use the four-month provision of § 101(a)(4) as a sword to subject union members to discipline when they initiate legal proceedings without first exhausting union remedies, regardless of whether the suit involves internal or external matters.

We wish to emphasize that our holding does not prevent unions from establishing and maintaining effective internal grievance procedures. This circuit has made clear that unions have a right to prescribe a variety of internal procedures for reviewing the claims of their members. *See Geddes v. Chrysler Corp.*, 608 F.2d 261, 264 (6th Cir. 1979) ("Such a policy provides the union with an initial opportunity to resolve internal disputes itself, if possible, avoiding both undue interference by the court in internal organization matters and the unnecessary allocation of public resources to

1996. The International maintains that Hrometz was required to appeal to the next level of union review, the GEC, before commencing legal proceedings in court. We disagree.

As of November 15, 1995, when Hrometz's appeal to the GEB was denied, the next meeting of the GEC would not have taken place until April of 1996. Thus, to pursue further internal union review, Hrometz would have had to wait at least eight months from his expulsion before filing his federal suit. This court has held that "[a] union member . . . is not statutorily required to pursue a claim through internal procedures longer than four months before instituting judicial proceedings." *Dunleavy v. Local 1617 United Steelworkers*, 814 F.2d 1087, 1090 (6th Cir. 1987) (citing 29 U.S.C. § 411(a)(4)); *see also Ornellas v. Oakley*, 618 F.2d 1351, 1354 (9th Cir. 1980) (holding that union remedies had been adequately exhausted when the remaining intra-union appeal would have occurred outside of the statutory four-month period). Hrometz therefore properly exhausted his internal union remedies before bringing the present suit.

### C. Hrometz's expulsion violated his rights under the LMRDA

Section 101(a)(4) of the LMRDA, titled the "Bill of Rights of Members of Labor Organizations," provides the following protection to union members initiating proceedings before courts and administrative boards:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . *Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization,* before instituting legal or administrative proceedings against such organizations or any officer thereof . . . .

the Third and Ninth Circuits have observed that the Supreme Court's inference in *Marine Workers* that the NLRA's protection extends strictly to union members pursuing public domain matters is understandable only in the context of the NLRA, which was specifically designed to regulate matters in the public domain. *See Pawlak v. Greenawalt*, 628 F.2d 826, 830 (3d Cir. 1980); *Operating Engineers Local Union No. 3 v. Burroughs*, 417 F.2d 370, 373 (9th Cir. 1969).

The LMRDA, by contrast, was "designed specifically to regulate internal union affairs." *See Pawlak*, 628 F.2d at 830. Both circuits concluded that it would be anomalous, in light of that purpose, to hold that the right to sue contained in the LMRDA does not protect a union member's right to bring suits concerning internal matters. *See id.* (holding that the LMRDA protected a union member against disciplinary action taken in response to his filing suit, regardless of whether the suit concerned an internal or external matter); *Burroughs*, 417 F.2d at 373 (same). We find the distinction drawn in these cases to be persuasive, and the defendants have been unable to cite any contrary authority.

Moreover, Hrometz argues that *Marine Workers* is not only consistent with his position, but affirmatively supports his claim that the right-to-sue provision of the LMRDA prohibits unions from disciplining members for litigating claims before exhausting the internal union grievance process, regardless of the nature of those claims. The Court in *Marine Workers* discussed § 101(a)(4) of the LMRDA in order to shed light on the protections afforded union members under § 8(b)(1)(A) of the NLRA. Significantly, the Court wrote that the four-month exhaustion requirement allowed by § 101(a)(4) "*is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union.*" *Marine Workers*, 391 U.S. at 426 (emphasis added).

29 U.S.C. § 411(a)(4) (emphasis added). The question in the present case is whether, under section 101(a)(4) of the LMRDA, a union can discipline a member who does not comply with the union's four-month exhaustion requirement as set forth in its constitution.

Both Hrometz and the union defendants base their opposing answers to this question on the Supreme Court's decision in *National Labor Relations Board v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418 (1968) (*Marine Workers*). In that case, Edwin Holder, a member of the Local 22 branch of the Marine Workers union, filed a complaint before the National Labor Relations Board (NLRB) in which he objected to the conduct of his local union's president. *See id*. at 420. Pursuant to the union's constitution, Holder was expelled for filing a complaint before the NLRB without first exhausting his internal union remedies. He then filed a second charge with the NLRB, arguing that his union had violated § 8(b)(1)(A) of the National Labor Relations Act (NLRA) by disciplining him in retaliation for his exercise of a protected activity with respect to his employment.

Section 8(b)(1)(A) provides in part:

It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section [7]: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein . . . .

29 U.S.C. § 158(b)(1)(A). The referenced rights contained in § 7 include "the right to self-organization, to form, join, or assist labor organizations, . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Prior NLRB decisions had held that § 7 encompassed the right to

petition the NLRB for relief as well. *See, e.g.*, *Local 138, Int'l Union of Operating Engineers*, 148 N.L.R.B. 679, 681 (1964).

Balancing a union member's right of access to the NLRB against a union's right to regulate its internal affairs, the Supreme Court concluded that a union could not penalize a member for invoking the protection of the NLRA where the member's complaint pertained to the "public domain covered by the [NLRA]." *Marine Workers*, 391 U.S. at 428. Specifically, the Court held that "*where the complaint or grievance does not concern an internal union matter, but touches a part of the public domain covered by the [NLRA], failure to resort to any intra-union grievance procedure is not ground for expulsion from a union*." *Id*. (emphasis added).

Local 550 and the International infer from this statement that a union *can* legally penalize a member for failing to exhaust his internal remedies when his complaint relates to an "internal union matter." *Id*. The district court agreed. Because it classified Hrometz's dispute over the sale of the automobile as an internal union matter, the district court concluded that Hrometz's expulsion was permitted under *Marine Workers*.

We first note that the district court's decision is not unreasonable if one focuses solely on the *Marine Workers* language italicized above. One can hardly fault the district court's conclusion that the sale of the automobile was an internal union matter, and the implication of the Supreme Court's statement in *Marine Workers* would seem to allow a union to discipline members who litigate such internal matters without first pursuing the union's grievance procedures.

There is a key distinction, however, between *Marine Workers* and the present case that was not considered by the district court. The union member in *Marine Workers* brought suit under § 8(b)(1)(A) of the NLRA, in contrast to Hrometz who invoked the right-to-sue provision of the LMRDA. Both