**UNITED STATES of America,**
**Appellant,**

v.

**HOPKINS DODGE, INC., Appellee.**

**UNITED STATES of America,**
**Appellant,**

v.

**FREEWAY DODGE, INC., Appellee.**

**No. 87–5350MN.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1988.

Decided June 13, 1988.

Christine R. Whittaker, Washington, D.C., for appellant.

James S. Simonson, Minneapolis, Minn., for appellee.

Before GIBSON and BEAM, Circuit Judges, and DUMBAULD,* Senior District Judge.

---

DUMBAULD, Senior District Judge.

Appellees (automobile dealers) admittedly engaged in repeated violations of the "Truth in Lending Act"[1] and regulations thereunder. Injunctive relief against future violations was awarded by the District Court's permanent injunction of June 15, 1987 (R. 234–41), 661 F.Supp. 1155. However the Federal Trade Commission (F.T.C.) further sought civil penalties under 15 U.S.C. 45(m)(1)(B). The District Court[2] granted appellees' motion for summary judgment with respect to that issue (R. 230) on the ground that the F.T.C. had failed to make specific findings as required by 15 U.S.C. 45(m)(1)(B). We affirm.

### Statutory Scheme

Like the Clayton Act,[3] the Federal Trade Commission Act[4] (which established the Federal Trade Commission) was enacted to supplement the provisions of the landmark Sherman Act of July 2, 1890,[5] which attacked restraints of trade and monopolies in interstate commerce.[6]

The basic thrust of the Federal Trade Commission Act is found in 15 U.S.C. 45. By Section 45(a)(1) "Unfair methods of competition in or affecting commerce, and unfair or deceptive practices, in or affecting commerce, are declared unlawful." By section 45(a)(2) the Federal Trade Commission is empowered and directed "to prevent persons, partnerships, or corporations ...

---

\* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania.

1. Act of May 29, 1968, 82 Stat. 146 et seq. as amended, 15 U.S.C. 1691 et seq. There is no dispute as to the repeated occurrence of violations. Appellees merely argue that the regulations are complex and often *de minimis* in importance, specifying, for example the size of type to be used and the side of the page where items are to be placed. See, *e.g.* regulation Z, 12 CFR 226.9 and 226.803, 15 U.S.C. foll. 1700. Of course it is important that significant data not be buried in fine print; and the eyesight of consumers as well as courts needs protection. See Supreme Court Rule 33.1(b).

The controversy in the case at bar related to compliance *vel non* by the F.T.C. with the enforcement procedures prescribed by 15 U.S.C. 1607(c) for truth in lending cases.

2. The Honorable Edward J. Devitt, Senior District Judge of the District of Minnesota.

3. Act of October 15, 1914, 38 Stat. 730, 15 U.S.C. 12 et seq. The Clayton Act was designed to reach restraints "in their incipiency" before consummation. *Standard Fashion Co. v. Magrane-Houston Co.*, 258 U.S. 346, 356, 42 S.Ct. 360, 362, 66 L.Ed. 653 (1922).

4. Act of September 26, 1914, 38 Stat. 717, 15 U.S.C. 41 et seq.

5. 26 Stat. 209, 15 U.S.C. 1 et seq.

6. See, in general, Robert H. Jackson and Edward Dumbauld, "Monopolies and the Courts," 86 U. of Pa.L.Rev. (1938) 231, 252–53.

from using" such unfair methods of competition or such unfair or deceptive acts or practices. Section 45(b) provides the procedure by which the F.T.C. shall make "cease and desist" orders and by which judicial review of such orders by Courts of Appeals may be had.[7]

Section 45(m)(1)(B) further provides for civil penalties:

If the Commission determines in a proceeding under subsection (b) of this section that any act or practice is unfair or deceptive, and issues a final cease and desist order with respect to such act or practice, then the Commission may commence a civil action to obtain a civil penalty in a district court of the United States against any person, partnership, or corporation which engages in such act or practice—

(1) after such cease and desist order becomes final *(whether or not such person, partnership, or corporation was subject to such cease and desist order),* and

(2) *with actual knowledge that such act or practice is unfair or deceptive and is unlawful under subsection (a)(1) of this section.*

In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.[8]

When the Truth in Lending Act became law in 1968, the F.T.C. thus already had functions with respect to practices which were (1) anticompetitive or (2) unfair and deceptive. The scheme of enforcement procedure for provisions of that statute assigned the major enforcement functions to the F.T.C.

15 U.S.A. 1607(c) provides:

Except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to some other Government agency under subsection (a) of this section, the Federal Trade Commission shall enforce such requirements. For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, *a violation of any requirement imposed under this subchapter shall be deemed a violation of a requirement imposed under that Act.* All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with the requirements imposed under this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act.[9]

A conceivable interpretation of the above-quoted provision might be that it is a self-standing authorization of the use by the F.T.C. of its entire panoply of powers for the purpose of enforcing the Truth in Lending Act, without regard to the procedures prescribed in the Federal Trade Commission Act for exercising the enforcement powers there committed to the F.T.C.

However, the F.T.C. at argument disclaimed reliance upon any such "indepen-

---

7. Section 45(b) in pertinent part reads:

If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice.

8. Italics supplied. Subsection (m) was added by section 205 of the Act of January 4, 1975, 88 Stat. 2183, 2201. No question has been raised whether this resort to *res inter alios acta* constitutes due process of law. *A priori* it does, for

there is no reason why the F.T.C. should be required to determine over and over again the illegality of a "practice" (such as the practice of a mortgagee bank requiring mortgagors to contribute to an escrow fund to pay taxes, on which fund the bank retains the interest earned) if the defendant charged with engaging in it knows that it has been found illegal by the Commission, and is given an opportunity to litigate the facts regarding whether or not he has engaged in the proscribed practice.

9. Italics supplied. This provision constitutes Section 108 of the Act, 82 Stat. at 150. Subsections (a) and (b) assigned appropriate cognate aspects of the Act to the Comptroller of the Currency, the Federal Reserve Board, and other agencies.

dent potency" theory,[10] and espoused the more logical view that the italicized language in the above-quoted passage incorporates by reference for enforcement of the Truth in Lending Act the same remedial procedures as are prescribed in 15 U.S.C. 45 for enforcement of the Federal Trade Commission Act.

We must turn then to 15 U.S.C. 45 to determine when and how a civil penalty may be imposed for a violation of the Truth in Lending Act (which by virtue of 15 U.S. C. 1607(c) is to be treated as if it were a violation of the Federal Trade Commission Act).

The first prerequisite required by 15 U.S. C. 45(m)(1)(B) in order to impose a civil penalty upon a non-party to the proceeding in which an administrative determination by the F.T.C. that the particular practice is unfair or deceptive and hence unlawful under Section 45(a)(1) was made is that the F.T.C. must determine "in a proceeding under subsection (b)" of Section 45 "that any act or practice is unfair or deceptive," and that it must then issue "a final cease and desist order with respect to such act or practice."

It was the Commission's failure to make such a determination under subsection (b) of Section 45 of the Act that the practices engaged in by appellees were unfair or deceptive, and its failure to issue a final cease and desist order with respect to *such* practices that impelled Judge Devitt, correctly, to grant summary judgment in favor of appellees.

### Application to the Case at Bar

In the light of the foregoing statutory scheme, we proceed to consider what was done by the F.T.C. in the case at bar.

How did the F.T.C. undertake to establish the above-specified first requirement of Section 45(m)(1)(B), namely a final cease and desist order "with respect to such act or practice" made "in a proceeding under subsection (b)" of Section 45?

It furnished appellees copies of four F.T. C. decisions,[11] together with a "synopsis" citing the said decisions in footnotes.[12] Of these four cases, only *Seekonk* (at 82 F.T. C. 1055, R. 156] states as a "conclusion" that respondents "engaged in false, misleading and deceptive advertising, and *utilized unfair and deceptive acts and practices* in the offering for sale, sale and distribution of meat and meat products." [13] But *Seekonk* is basically a "bait and switch case", a type of abusive practice which apparently, insofar as shown by appellant's brief, was never utilized by appellees. The charges against appellees were essentially for advertising credit terms without conforming to requirements of Regulation Z regarding full disclosure of all terms (annual percentage rate stated as such, number of payments, etc.)

Examination of these four decisions by the F.T.C. in other cases not involving appellees as parties discloses that nowhere in said decisions does the F.T.C. determine that *such* practice (namely a practice in which appellees admittedly have engaged) is "unfair or deceptive."

This failure to comply with the above-stated first requisite for obtaining a civil penalty against appellees automatically also constitutes failure to meet the requirement of Section 45(m)(1)(B)(2) with respect to appellees' "actual knowledge that such practice is unfair or deceptive and is unlaw-

---

**10.** This phrase is used by Justice Frankfurter in *Adamson v. California,* 332 U.S. 46, 66, 67 S.Ct. 1672, 1682, 91 L.Ed. 1903 (1947), to explain the direct operation of the Fourteenth Amendment in certain cases without resort to the "selective incorporation" theory espoused by other Justices.

**11.** *In the Matter of Charnita Inc.,* 80 F.T.C. 892 (1972) [R. 97]; *In the matter of Seekonk Freezer Meats, Inc.,* 82 F.T.C. 1025, 1055 (1973) [R. 126]; *In the Matter of Beauty–Style Modernizers,* 83

F.T.C. 1761 (1974) [R. 75]; and *In the Matter of Reliable Mortgage Co.,* 85 F.T.C. 21 (1975) [R. 162].

**12.** R. 73–74.

**13.** [Italics supplied]. *Beauty–Style* related to home improvements; *Charnita* to real estate; *Reliable* to loans. No cases relating to automobile dealers were furnished by the F.T.C. to appellees.

ful under subsection (a)(1)" of Section 45. For though it is established that appellees were furnished copies of those decisions, and hence are chargeable with knowledge of what is contained in those decisions, they were thereby given no knowledge that the practices engaged in by appellees were unfair or deceptive if those decisions did not contain a determination with respect to such practices holding that they were unfair or deceptive and prohibited by the terms of a final cease and desist order. Hence the F.T.C. failed to establish that appellees were liable for a civil penalty.

For the foregoing reasons the judgment of the District Court is

AFFIRMED.