## CIRCUIT COURT OF CAMPBELL COUNTY

In re American Dollar
Exchange, Inc., t/a AMDEX,
and Charles G. Lowry

May 15, 1992

BY JUDGE J. SAMUEL JOHNSTON, JR.

At the request of the Commonwealth of Virginia, through the Attorney General, the Court granted on January 3, 1992, an investigative order compelling American Dollar Exchange, Inc., t/a AMDEX, and Charles G. Lowry, its president (jointly referenced herein as "AMDEX"), to disclose certain information necessary for a determination of whether AMDEX has violated the Virginia Consumer Protection Act of 1977 ("the Act"), Va. Code § 59.1–196. The purpose of an investigative order is to enable the Commonwealth to determine if an enforcement suit under the Act would be appropriate. After a review of the requested material, the Commonwealth could conclude that no enforcement action was necessary or appropriate.

The provisions of § 59.1–210 permit the target of an order 21 days to seek a protective order or other relief after service of the order. AMDEX moved for such relief with reference to two categories of material. These two categories are, first, documents sufficient to identify its Virginia customers, and second, documents evidencing its purchase of the silver coins which it resells to its customers. The Court heard evidence and argument on March 18, 1992, on AMDEX's motion.

### I. *Reasonable Cause*

AMDEX argues that the Attorney General lacks reasonable cause to investigate. Sections 59.1–201(A) and (B)(2) of the Act require that there be reasonable cause to believe that a violation of the Act may have occurred or may be about to occur as a prerequisite for the issuance of an investigative order. Reasonable cause is a lower

standard than probable cause. "Reasonable cause" does not require an actual belief that violations of the Act have in fact occurred. The Attorney General has reasonable cause to investigate. I find that reasonable cause is found in the literature and promotional tapes which AMDEX has created. The Court does not need to hear consumer testimony to determine that AMDEX may have engaged in misrepresentation in violation of the Act. It is not necessary to receive testimony from consumers to determine the existence of reasonable cause.

AMDEX has advertised the coming collapse of our monetary system and economy because our currency is no longer backed by precious metal. AMDEX has offered silver coins as an investment which would retain its value even after an economic collapse. Over 100 Virginians have participated in the AMDEX purchase plan, typically buying one or two bags of silver coins per month on a continuing basis.

AMDEX has published a videotape entitled *Buried Treasure* for use in sales presentations. This videotape represents that a prominent Tennessee banker buried several barrels of silver coins in the mountains because the coins were such a good investment. The tape, however, fails to disclose that the banker was Jake Butcher. Mr. Butcher was the subject of criminal prosecutions in Tennessee, convicted of several felonies, and served a lengthy penitentiary sentence from which he was recently paroled.

AMDEX has represented that each single bag costing $59.95, plus tax, is worth approximately $50.00, although the face value of the coins is only $5.00. AMDEX also has offered a two bag monthly purchase option for a price of $119.90 per month, plus tax. For this AMDEX has represented that it would provide coins with a face value of $15.00, but a real value of $150.00.

AMDEX points to the "Red Book" as an indicator of value of its coins. AMDEX admits that the Red Book reflects retail prices generally charged by coin dealers. Dealers pay wholesale prices. AMDEX suggests to some of its customers how they might attempt to sell their coins at prices approximating the Red Book prices. The Sales Representatives' Handbook states, at 15:

> The method we recommend is to run an ad in your local paper describing your coins . . . . To increase the price you get, use the "red-book" to grade and price your coins . . . .

> Be prepared to screen the callers, eliminating those looking for a "distress sale" in favor of *collectors* looking to buy more coins . . . .

This instruction is noteworthy in light of the same Handbook's statement, at 4, that, "It is important to understand that *AMDEX's* mission is *not* to provide our members with expensive 'investment grade' collectibles" (emphasis original). Thus, one interpretation of this literature is that AMDEX may have contradicted itself. On the one hand, AMDEX tells its customers that its purpose is not to sell collectibles; on the other hand, it tells its customers to resell to people seeking collectibles. These seemingly contradictory representations once again support the finding that reasonable cause to investigate exists.

AMDEX argues that its use of a Salomon Brothers survey of investment returns of coins and other assets was not deceptive but was only an accepted practice in the industry. Salomon tracked prices for certain rare, expensive coins. AMDEX admits that the coins which it sold were not rare like those in the Salomon survey. AMDEX nevertheless attempts to justify its use of the Salomon survey with evidence of certain publications of William J. Ulrich, another coin dealer. The Federal Trade Commission, however, has successfully sued Mr. Ulrich for his unfair or deceptive acts in the coin industry and obtained monetary relief for his customers. *Federal Trade Commission v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991). Such industry practices, particularly by one enjoined by the Federal Trade Commission, fortify my finding that there is reasonable cause to investigate.

## II. *The Customer List*

AMDEX argues that, even if there is reasonable cause to suspect a violation of the Act, its customer list is nevertheless protected from disclosure by the Fourth and Tenth Amendments to the United States Constitution. I disagree. AMDEX also invokes various provisions of the Constitution of Virginia. AMDEX lacks standing to assert privacy rights, whatever they may be, on behalf of its past and current customers.

Mr. Lowry has attempted to act as a class representative of the customers to protect their claims to privacy. There is no class action procedure in Virginia which permits him to do this without their

consent, which he lacks. The Court did hear testimony of two customers identifying themselves as John Does (and revealing their real names to the Court *in camera*). These customers requested that their names not be revealed to the Commonwealth. The Commonwealth agreed to the deletion of their names from the list to be provided by AMDEX. I will also delete from the list any other customers who request anonymity in Court after examination by the Commonwealth or the Court.

AMDEX argues that, in its various sales presentations, it promised privacy and confidentiality to its customers. It also bases its claim to their privacy on these promises. AMDEX has not offered any admissible evidence of what was actually said to the majority of prospective customers during the sales solicitations. The standard sales presentation notebook, contract and sales brochure do not promise any privacy. Those witnesses who testified on March 18 were simply not present during most of the sales presentations in Virginia. Furthermore, the John Doe affidavits submitted by AMDEX did not claim that they heard or relied upon such promises in agreeing to buy coins. Thus, even if it mattered, AMDEX has not shown that privacy was an element of the bargain expected by each customer.

The Commonwealth desires to send a neutral letter to the customers to request their cooperation in the investigation. Customers will be asked to phone the Office of the Attorney General if they choose to. The Commonwealth will not compel any customer to respond. Counsel for the Commonwealth shall submit a draft letter on the letterhead of the Office of the Attorney General for AMDEX's comments and the Court's review before AMDEX turns over the list of past and present customers.

The Commonwealth simply seeks to learn the identity of the customers so that they can be asked for interviews to determine their reaction to the sales presentation. At this point, it is not necessary for the Commonwealth to prove that any customer has actually been deceived. It is indeed possible that the interviews will reveal that no one was deceived. What is important at present is that the Commonwealth has reasonable cause to investigate whether any customer of AMDEX has been deceived. This reasonable basis entitles the Commonwealth to AMDEX's list of past and current customers.

### III. *The Purchase Records*

The Commonwealth also seeks discovery of the receipts, invoices

or other documents reflecting the purchase of AMDEX of the coins which it has sold to its monthly customers. AMDEX claims the identity of its suppliers is a proprietary secret. I do not believe that this information is necessary to the Commonwealth at present, though the Commonwealth may raise the issue again later.

## IV. *Conclusion*

For these reasons, AMDEX's Motion is denied so far as it relates to the customer list, and the Investigative Order is stayed as to the production of receipts, invoices and other purchase records. AMDEX shall produce its Virginia customer list pursuant to the Investigative Order, as modified by this letter opinion.